Nash, C. J.
 

 The prisoner, through his counsel, has assigned several reasons to show that he is entitled to a
 
 venire de novo.
 
 The first is for an alleged error in the Court in setting aside a
 
 *331
 
 juror, on the challenge of the State, as of being of kin to the prisoner. The great grandmother of the juror Ray, was the sister of the grandmother of the prisoner. Lord Coke says that relationship is a good cause of principal challenge, “ no matter how remote soever, for the law presumeth that one kinsman doth favor another before a stranger.” Thomas’s Coke, 3 vol. 518. Mr. Chitty, in the 3 vol. of his Criminal Law, lays down the same doctrine, with the exception that the relationship must be within the ninth degree, although it is by marriage; and Mr. Blackstone, 3 vol. of his Commentaries, 360, declares the rule to be as stated by Mr. Chitty. In this case, the juror Ray was within the prescribed degree related to the prisoner. From the grandmother were three degrees, and from the great grandmother four, making in the whole seven degrees, which was a cause of principal challenge on the part of the State, and the juror was properly rejected.
 

 The second reason assigned, was the alleged improper conduct of the jury. This consisted in the jury’s going on Sunday after they were empannelled, a mile and a half into the country for recreation. It is slated 4in the bill of exceptions, that they went in a body under the care of the sheriff, that they were kept together and no one spoke to them, nor did they speak to any one, and upon their return they immediately retired to their room. It was argued before us, as if this was a separation of the jury. This is not so. A separation of a jury is the departure of one or more jurors from their fellows, or the whole of the jurors departing from each other. Rut here there was no separation, no departing of any of the members of the jury from their fellows ; they kept together in one body during the whole time they were absent from the court room after receiving the charge of the Judge, and were in the care of the sheriff. The law does require that the jury, after being charged with the prisoner, shall be kept together in one body, but it nowhere directs
 
 where
 
 theyshall be kept. Nothing is more common, than for a jury, in a protracted trial where many days are consumed in its investigation, to retire under the charge of an officer to some private room to procure such refreshments as may be necessary, or to sleep at night. While therefore they do keep together, either in a house or in the open
 
 *332
 
 air, and hold no converse with any one, their being at the one place or the other, can have no effect upon their verdict — they have violated no duty. In this case, they went into the open field — it was the Sabbath day — no business was transacting. To require them to remain shut up in the jury room the whole day, would be imposing upon them an unreasonable burthen, no way required by the interest of the prisoner, or subserving the ends of justice ; on the contrary, by the slight recreation they did take, they were the better fitted to recommence their arduous and responsible duties on the Monday following. In truth, the reasons addressed to us for a
 
 venire de novo,
 
 would, with much more propriety, have been addressed to the Court below for a new trial. Upon the question here involved, the case of
 
 Tilghman,
 
 11 Ire. 513, is a very strong one. Three different members of the jury several times separated themselves from their brother jurors, when they had retired to their room after the Judge’s charge. Notes were thrown out by them from the window, and persons were admitted into the room — one a black man to carry them refreshments, and the others children to see their parents, and one held converse with a person not a juror, on the outside of the jury room door. The fifth exception was
 
 “
 
 because there was a separation of the jury, and other irregularities practiced by them before they returned their verdict.” The case was ably and fully argued on behalf of the prisoner, and all the authorities bearing upon the question brought to the notice of the Court. The exception was overruled, and the Court declare,
 
 u
 
 we take this position : if the circumstances are such as merely to put suspicion on the verdict, by showing not that
 
 there was,
 
 but there might have been undue influence brought to bear on the jury, because there was opportunity and a chance for it, it is a matter within the discretion of the presiding Judge,” which we have no right to interfere with. It is admitted that this is a strong case, but it is the law, and applies as. well when there is such a separation of the jury, as when they, as in this case, kept together and took a walk for recreation. But in the case before us there is not only no evidence of any tampering with the jury, but its impossibility is shown by the fact stated, that no one held intercourse with them, nor they nor any member of their body with any one. There
 
 *333
 
 can be no ground even of suspicion of improper conduct in this particular. If the fact be that improper influence was brought to bear upon the jury, as that they were fed at the charge of the prosecutor, or the defendant, or if they be advised and solicited how their verdict ought to be, or if they hear evidence in the jury room which was not offered and heard on the trial, We should not hesitate to direct a trial
 
 de
 
 novo, upon the ground that there had been no trial in contemplation of law.
 

 Tire third and last ground taken in behalf of the prisoner is, that the Court erred in setting aside the daughter of the prisoner, as a competent witness to go to the grand jury, upon the ground that it was the duty of the Attorney General to have before thé Court every one who was present at the commission of the oh fence, and that the prisoner was entitled to have all such persons examined before the petit jury. Before the bill of indictment was sent to the grand jury, the witness was brought before the Court by the State to ascertain her competency. Upon this examination she was set aside by the Court, “ because she did not appear to understand the obligations óf an oath, and had not intelligence sufficient to give evidence.” Of these things the Court below was the exclusive judge, nor indeed is there any objection on that ground. But still it is insisted under the authority of
 
 Holden’s
 
 case, 3 Car. & Payne Rep. 606, that the State was obliged .to produce, and put her upon the witness stand. This objection was raised in
 
 Martin’s
 
 case, 2 Ire. Rep. 101, and the case of
 
 Holden
 
 was relied on. It was duly considered, and the ruling there denied to be law, the Court declaring
 
 “
 
 it has neither principle nor practice in this State to support it.” The ground upon which the Court acted is fully sustained in many cases.
 

 Several reasons in arrest of judgment, have been filed in this case. The first is, “that it does not appear from the record that any
 
 ivrit
 
 for a special
 
 venire facias
 
 was issued to summon jurors. ’ * The record does not, it is true, positively shout that any writ was issued by the Clerk of the Court, but it does show that the order was made and the jurors did attend, for there is no suggestion in the reasons assigned of a want of jurors, nor any such suggestion in the argument. Under the maxim
 
 omnia presunmn-tur}
 
 &c., we must presume that the writ did issue. But to con
 
 *334
 
 stitute a legal jury under the Act of 1836, ch. 35, sec. 17, it is not necessary that any juror should be summoned under the special
 
 venire.
 
 The prisoner has a right to the full benefit of the order of the Court directing a special venire, and if the order has not been obeyed, it would be a good objection to the Court’s proceeding on the trial; if however the prisoner selects his jury without objection on that ground, it is a waiver of it. There was here no want of triers, and they may, for aught disclosed to us, have been summoned
 
 de circmnstautibus.
 

 The second reason assigned is, that it does not appear that any officer was duly sworn, and took the oath prescribed by law for a constable attending on a grand jury. It is admitted that the sheriff waited on the grand jury. He was the person in law upon whom that duty properly devolved. The objection is, that the oath prescribed in the Act of Assembly to be taken by a constable when detailed to wait on a grand jury, was not administered to the sheriff. We know of no law requiring it to be done, and there is good reason why it should be administered to the one and not to the other. The sheriff is an officer of the Court, and a sworn officer — a constable only becomes so as the officer of the grand jury, upon taking the oath prescribed by the Act. But it is no way necessary to the legal constitution of a grand jury, or to their legal transaction of any business coming before them, that any officer should be appointed to wait upon them. It is convenient and proper that they should have such officer, and when a constable, is so appointed he must take the prescribed oath. The reasons in arrest of judgment are overruled.
 

 The Court is of opinion that there is no error in the judgment of the Superior Court, and that it was warranted by the record, and directs that this opinion be cej'tified''to the Superior Court of Wake, that the judgment may be carried into execution.
 

 PeR Curiam. Judgment affirmed.