## STATE v. JAMES DIXON.

(Filed 19 April, 1939.)

**1. Jury § 1—**

The court has the discretionary power to allow a venireman to become one of the panel, notwithstanding that he has testified on the *voir dire* that he has formed and expressed an opinion as to defendant's guilt when he also testifies that he can disabuse his mind of such opinion and give the defendant a fair and impartial trial on the evidence produced.

**2. Same—**

Defendant's exception to the refusal of a denial of a challenge for cause cannot be sustained when he does not exhaust his peremptory challenge before the panel is completed.

**3. Jury § 3—Challenge to the array held properly denied in absence of showing of misconduct, partiality or irregularity in making up the list.**

A challenge to the array on the ground that the sheriff and his deputies selected for the special venire, under instructions by the sheriff, freeholders of good character, who had not served on the jury within the past two years and who lived in townships in the county other than the township in which the crime was committed and townships contiguous thereto, is properly refused, the instructions of the sheriff being in compliance with C. S., 2338, and the action of the sheriff and the deputies showing no partiality, misconduct or irregularity in making out the list.

**4. Criminal Law § 33—**

It is not necessary to the competency of confessions not obtained at a judicial hearing before a magistrate that defendant be warned that anything he says or admits will be used against him.

**5. Homicide § 27h: Criminal Law § 53d—Evidence held not to require submission of question of defendant's guilt of manslaughter.**

In this prosecution for homicide defendant's confessions, properly admitted in evidence, tended to show that defendant killed his wife with premeditation and deliberation an hour or more after having formed a fixed intent to commit the act. *Held:* The refusal of the court to submit to the jury the question of defendant's guilt of manslaughter is not error, and the instruction limiting the jury's consideration to the questions of murder in the first and second degrees and acquittal is without error.

APPEAL by defendant from *Armstrong, J.,* at October Term, 1938, of CABARRUS. No error.

A written confession, purporting to be signed by the defendant and introduced in evidence by the State, reads: "(On September 8, 1938) I ate supper at Mrs. Trieces about 6:30 and went on home. But before eating supper I went by my house and asked my wife about 6:00 why she had not started cooking supper earlier than she had, and she said that she was cooking that for her and someone else and for me to go up

to Mrs. Trieces and get my supper. I went up to Mrs. Trieces and ate my supper and returned home about 6 :00 to 6 :45 and when I returned home I asked my wife if she had supper ready and she said 'No, supper was not done' and my wife asked me if I had not eaten up at Mrs. Trieces, and I said 'Yes, but I always go home and eat a little too' and we did not speak for a while—about 10 :00 she began to curse me and I tried to get her to stop but she kept on cursing me and we had a fist fight and she tried to hit me with a bottle but hit herself and fell down on the floor and I got on top of her and beat her with my fist—she lay on the floor after I had hit her on the floor for about 5 or 10 minutes and when she got up she got a small clock and hit me in the head. From the fight at 10 :00 my wife and I did not have anything or very little to say to one another until about 2 :00 A.M., Sept. 9, 1938. I went in the kitchen and got my axe and hid it with my right side or back and brought the axe into the bedroom where my wife was laying down on the bed and raised the axe over my wife while she was laying down and hit her in the head two or three times with the head of the axe and I guess I killed her at that time because she never said anything but just moved a little the first time I hit her. I then took newspapers and set the house on fire with my wife in the house on the bed. I immediately left the house went to the railroad, down the railroad to Concord and to the Concord Police Station where I gave myself up and told some of the policemen, I think his name was Mr. Sloop, all about the killing of my wife but did not tell him about burning the house. My wife made me awful mad when we had the first fight and I never did get over my mad spell until I hit her with the axe and burnt the house. I would have hit my wife with the axe earlier in the night but it was raining and I did not want to get out in the rain myself. I knew I was going to leave as soon as I hit her and I did not want to get wet. I decided to kill my wife a little more than an hour before I killed her but the rain kept me from doing it, as I did not want to get wet."

The defendant offered no evidence.

The defendant was convicted of murder in the first degree, and from judgment of death appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*E. Johnston Irvin and Robert H. Irvin for defendant.*

SCHENCK, J. The exceptive assignments of error may be discussed in four groups.

The first group of assignments of error relate to the failure of the court to sustain challenges to certain veniremen who, on the *voir dire,*

testified in effect that they had, from what they had heard and read, formed the opinion that the defendant was guilty, but that they could disabuse their minds of such opinion and go in the jury box and give the defendant a fair and impartial trial upon the evidence produced.

The court, after hearing the testimony, in each case found that the venireman was a fair and competent juror, and permitted him to become one of the panel. The finding that a juror is a fair one, though he has formed and expressed an opinion, is a matter in the discretion of the trial judge and is not reviewable on appeal. *S. v. Banner,* 149 N. C., 520, and cases there cited. These assignments cannot be sustained.

This group of assignments is likewise untenable for the further reason that it appears from the record that after the court had refused to allow the defendant's challenge for cause of the last of the veniremen who said he had formed an opinion as to the defendant's guilt, and after the defendant had made his last challenge for cause, he still had remaining seven peremptory challenges. It is well settled that the defendant cannot object to the acceptance of a juror, so long as he has not exhausted his peremptory challenges before the panel is completed. *S. v. English,* 164 N. C., 498, and cases there cited.

The second group of assignments of error relate to the court's refusal to sustain the defendant's objection to the special venire. The defendant in his brief treats this objection and motion based thereon as a challenge to the array.

"Challenges to the array are at once an exception to the whole panel, in which the jury are arrayed or set in order by the sheriff in his return; and they may be made upon account of partiality or some default in the sheriff or his under-officer who arrayed the panel." 3 Blackstone Comm., 359. ". . . a challenge to the array can only be taken when there is partiality or misconduct in the sheriff, or some irregularity in making out the list." *S. v. Speaks,* 94 N. C., 865 (873); *S. v. Levy,* 187 N. C., 581. It appears in the record that when the objection was first lodged the court inquired of defendant's counsel if they had any evidence upon which to base their objection to the special venire "on the grounds of irregularity in making out the list and partiality or misconduct on the part of the sheriff in selecting the jurors," and the said counsel answered, "No, sir." It also appears in the record that "The court, at the time the motion was made, offered to permit the defendant's counsel to offer any evidence of partiality or misconduct of the sheriff," and that "Defendant's counsel states in open court that he has no evidence."

Notwithstanding the foregoing statements by defendant's counsel, they offered the sheriff and his two deputies who summoned the special venire who testified substantially that the deputies were instructed by the

sheriff "to go out and select men that had not been on the jury within the past two years, freeholders, and men of good character," and "to get them from townships other than 3-5-12, because they bordered on No. 4, where the crime was committed," and that such instruction was carried out in summoning the jury. The writ of *venire facias* is in compliance with C. S., 2338, and reads: "Now, therefore, you are commanded to summon a such number of persons qualified to act as jurors from the body of said county . . ." The elimination of those who had served on a jury in two years, non-freeholders, men not of good character, and those living in the vicinity of where the crime was alleged to have been committed, showed no partiality or misconduct on the part of the sheriff, or irregularity in making out the list, and indicated a compliance with the writ to summon "persons qualified to act as jurors." Those who were eliminated from the list by instruction of the sheriff were either subject to challenge for cause, or likely so to be, and the venire as far as possible should consist of men qualified to serve, and to encumber it with those subject to challenge for cause would restrict the number of *legales homines* from whom the jury was to be taken. The very object of a special venire is to get a body of men less liable to challenge for cause. *S. v. Cody,* 119 N. C., 908. There was no error in disallowing the challenge to the array.

The third group of assignments of error relate to testimony relative to confessions made orally and in writing by the defendant, when defendant had not been warned that anything he said or admitted would be used against him.

In *S. v. Grier,* 203 N. C., 586, it is written: "This argument raises the question whether a confession of crime must be rejected unless it appears from the evidence that the person charged is informed at the time that he is at liberty to refuse to answer any question and that his refusal to answer shall not be used to his prejudice. Such information must be given to a prisoner who is examined by a magistrate in relation to the offense charged. C. S., 4561. This caution is essential to the examination at the hearing after arrest because the proceeding is judicial and after the examination of the complainant and his witnesses 'the magistrate shall then proceed to examine the prisoner,' but not on oath. This warning is not required in an extra-judicial conference between an officer and a person charged with crime who is under no constraint to answer. *S. v. Conrad,* 95 N. C., 666; *S. v. Howard,* 92 N. C., 772; *S. v. Suggs,* 89 N. C., 527." Neither the oral confessions mentioned in the testimony nor the written admissions introduced in evidence were obtained at a judicial hearing before a magistrate, but were freely and voluntarily made and signed before witnesses, without any promise of

reward or threat of violence as an inducement. There was no error in overruling these assignments of error.

The fourth group of assignments of error relate to the fact that the court in its instructions excluded from the jury any and all consideration of the charge of manslaughter, and restricted their deliberations to the questions of murder in the first and second degrees and acquittal. In this there was no error. The evidence discloses no evidence upon which a verdict of manslaughter could have been rendered.

The defendant's written confession is to the effect that he and his wife, the deceased, had a fight about 10 or 10:30 o'clock p.m., that she then lay on the bed, and that he got the axe about 2 o'clock a.m., and struck her over the head with it, that he had determined to kill her about an hour before he actually struck her with the axe, but as he was going to leave as soon as he killed her he waited because it was raining and he did not want to go out in the wet. There was no evidence that his reason was dethroned by sudden passion caused by provocation at the time the fatal blow was stricken. *S. v. White,* 138 N. C., 704, and cases there cited; *S. v. Levy, supra.*

We have given to this case the careful consideration that its gravity demands and we find in the trial

No error.