STATE v. THADEUS NATHANIEL ALLRED, Alias BERNARD BROWN

No. 11

(Filed 15 October 1969)

**1. Jury § 6— right to examine prospective jurors**

In selecting the jury in a civil or criminal action, the court or any party to the action has the right to make inquiry as to the fitness and competency of any person to serve as a juror.

**2. Jury § 6— voir dire examination — purposes**

The voir dire examination of jurors is a right secured to the defendant by statute and enables counsel to ascertain whether there exist grounds for challenge for cause and to exercise intelligently the peremptory challenges allowed by law.

**3. Jury § 7— right of challenge — purpose**

The right of challenge is given for the purpose of selecting an impartial jury.

**4. Jury § 7— challenge to the poll — peremptory — for cause**

A challenge to the poll (to each prospective juror) may be peremptory within the limits allowed by law, or for cause without limit if cause is shown.

**5. Descent and Distribution § 9— second cousins — degree of kinship**

Second cousins are related in the sixth degree of kinship. G.S. 104A-1.

**6. Jury § 7— challenge for cause — juror related to defendant — degree of kinship**

In this jurisdiction, a juror who is related to the defendant by blood or marriage within the ninth degree of kinship is properly rejected when challenged by the State for cause on that ground.

**7. Jury § 7— challenge for cause — juror related to State's witness**

While relationship within the ninth degree between a juror and a State's witness, standing alone, is not legal ground for challenge for cause, where such relationship exists and is known and recognized by the juror, a defendant's challenge for cause should be rejected only if it should appear clearly that, under the circumstances of the particular case, the challenged juror would have no reason or disposition to favor his kinsman by giving added weight to his testimony or otherwise.

**8. Jury § 7— challenge for cause — juror related to State's witness**

Ordinarily, there would be no substantial basis for challenge for cause of a prospective juror related within the ninth degree to a State's witness if the testimony of the witness will be directed to proof of some formal matter or to some minor facet of the case.

**9. Jury § 7— challenge for cause — juror related to State's key witnesses**

In this first-degree murder prosecution, the trial court erred in disallowing defendant's challenge for cause of a prospective juror who stated upon voir dire examination that he and two of the State's witnesses were second cousins and that he had known them for 15 to 20 years, where the State's case depended upon the testimony of the two witnesses, who were also under indictment for the same homicide, and the testimony of the two witnesses pointed to defendant as the murderer and tended to minimize their own culpability, since it would have been reasonable for the juror to believe that acceptance of the witnesses' testimony would or might be advantageous to his kinsmen in the disposition of their own cases.

**10. Jury § 7— peremptory challenges defined**

Peremptory challenges are challenges which may be made or omitted according to the judgment, will or caprice of the party entitled thereto, without being required to assign a reason therefor.

**11. Jury § 7— capital case — defendant's peremptory challenges**

Defendant in a capital case has the right to challenge fourteen jurors peremptorily without cause. G.S. 9-21.

**12. Jury § 7— challenge for cause — disallowance — preservation of exception**

In order to preserve an exception to the court's denial of a challenge for cause, defendant must (1) exhaust his peremptory challenges and (2) thereafter assert his right to challenge peremptorily an additional juror.

**13. Jury § 7— challenge for cause — erroneous disallowance — exhaustion of peremptory challenges — denial of further peremptory challenge**

Where the trial court in this capital case erroneously disallowed defendant's challenge for cause of a prospective juror, and defendant exercised 14 peremptory challenges, including one for the juror for whom the challenge for cause was erroneously disallowed, the trial court's refusal to allow defendant to challenge peremptorily an additional juror on the ground that defendant had exhausted his peremptory challenges is *held* a denial of defendant's right under G.S. 9-21 to challenge 14 jurors peremptorily without cause.

APPEAL by defendant from *Bowman, Special Judge,* March 1969 Criminal Session of RICHMOND.

Criminal prosecution on an indictment charging that defendant, on November 12, 1968, "feloniously, wilfully, and of his malice aforethought, did kill and murder one Braxton Crawford Quick."

Upon arraignment on the charge of murder in the first degree, defendant through his court-appointed counsel, Charles B. Deane, Jr., pleaded "Not Guilty."

During the selection of the jury, defendant challenged peremptorily fourteen of the prospective jurors. One of these prospective jurors, Booker Spencer, was first challenged *for cause.* Upon the court's refusal to allow the challenge for cause, defendant exercised his right of peremptory challenge. When the last juror selected, Robert L. Hicks, Jr., was called for *voir dire* examination, defendant undertook to challenge him peremptorily. The court disallowed this attempted challenge on the ground defendant had exhausted his rights in respect of peremptory challenges. Thereupon, Juror Hicks was accepted as the twelfth member of the panel selected, sworn and impaneled to try the case. A thirteenth (alternate) juror was selected but did not participate in the jury's deliberations and verdict.

The only evidence was that offered by the State.

Braxton Crawford Quick, a salesman for Davis Candy Company, operated a company truck. He sold to retail merchants, making deliveries from the truck.

On November 12, 1968, about 4:45 p.m., passersby noticed the Davis truck on the shoulder of a rural paved road, in a rural area north of Hamlet, N. C. Upon investigation, they discovered the lifeless body of Braxton Crawford Quick. No living person was there. Quick's body, still warm, was inside the truck. His leather money pouch was hooked to his belt. It was open and, except for two checks, was empty. His pants pockets were torn. A few coins were lying on the floor under his body. He had been fatally wounded by a .22-caliber bullet.

Calvin Townsend operated a place of business, which included a store and poolroom, in "north Hamlet." Billy McRae, Eddie McRae and defendant were in Townsend's place of business "in the neighborhood" of 4:00 p.m. on November 12, 1968. Townsend had known Billy McRae and Eddie McRae "practically all their lives." He had not known defendant. Shortly after the McRae brothers and defendant had gone outside, Quick entered Townsend's store. Quick called upon Townsend regularly. On this occasion, Townsend paid Quick $9.20, consisting of "9 ones and 20 cents, two dimes," for merchandise then purchased. Quick left Townsend's place of business. Townsend did not see the McRaes and defendant or any of them, nor did he see Quick, after they went out the door of his place of business.

There was evidence, independent of the testimony of Billy McRae and of Eddie McRae, tending to establish the facts narrated in the preceding paragraphs.

The testimony of Billy McRae and of Eddie McRae, who were offered as witnesses for the State, was sufficient to support a verdict that defendant was guilty of the first degree murder of Quick.

The record shows that, at the conclusion of the jury's deliberations, the following occurred:

"Upon the return of the jury the court asked the clerk to take the verdict from the jury:

"CLERK: Will the prisoner please stand. How say you. Is he guilty of the felony of murder in the first degree whereof he stands indicted or not guilty?

"FOREMAN: Guilty.

"The jury was polled upon motion of the defendant. The foreman was asked by the clerk as follows:

"CLERK: Mr. Goodman, foreman of the jury, you have returned a verdict of guilty of murder in the first degree. Is this your verdict?

"FOREMAN: Yes.

"CLERK: And do you still assent thereto?

"FOREMAN: Yes.

"The following question was asked each juror: 'Your foreman has returned a verdict of guilty of murder in the first degree, is this your verdict?' Each juror answered, 'Yes.' Then the question was asked each juror, 'And do you still assent thereto?' Each juror answered, 'Yes, Ma'am.' "

Upon the foregoing verdict, the court pronounced judgment that defendant suffer death by the inhalation of lethal gas.

Defendant excepted and appealed. On account of defendant's indigency, orders were entered that his appeal be perfected by his court-appointed counsel and that all necessary costs incident to perfecting the appeal be paid by Richmond County.

*Attorney General Morgan, Deputy Attorney General Moody and Assistant Attorney General Harrell for the State.*

*Charles B. Deane, Jr., for defendant appellant.*

BOBBITT, J.

Whether the court's refusal to excuse Juror Hicks denied defendant's right under G.S. 9-21 to challenge fourteen jurors "peremptorily without cause," depends upon whether the court erred in refusing to allow defendant's challenge *for cause* of Juror Spencer. To reject Juror Spencer, defendant was required to challenge him peremptorily. The court denied defendant's right to challenge Juror Hicks on the ground that defendant had theretofore expended all of his fourteen peremptory challenges, inclusive of the one used to reject Juror Spencer.

[1, 2]   In selecting the jury, the court, or any party to an action, civil or criminal, has the right to make inquiry as to the fitness and competency of any person to serve as a juror. G.S. 9-15(a). "The voir dire examination of jurors is a right secured to the defendant by the statutes and has a definite double purpose: First, to ascertain whether there exist grounds for challenge for cause; and, second,

to enable counsel to exercise intelligently the peremptory challenges allowed by law." *State v. Brooks,* 57 Mont. 480, 188 P. 942. "The presiding judge shall decide all questions as to the competency of jurors." G.S. 9-14.

**[3, 4]** "The right of challenge is not one to accept, but to reject. It is not given for the purpose of ·enabling the defendant, or the State, to pick a jury, but to secure an impartial one." *State v. English,* 164 N.C. 497, 507, 80 S.E. 72, 76. "A challenge to the poll (to each prospective juror) may be peremptory within the limits allowed by law, or for cause without limit if cause is shown." *State v. McKethan,* 269 N.C. 81, 87, 152 S.E. 2d 341, 346.

The portion of the record pertinent to defendant's challenge of Juror Spencer discloses the matters set forth below.

When examined by the solicitor on *voir dire,* Juror Spencer testified he and the McRae brothers were second cousins and that he had known them "about 15 or 20 years." The record indicates that, after Spencer had so testified, no further question was asked by the solicitor.

In response to inquiry by defense counsel, the solicitor stated the McRae brothers would be called to testify as witnesses for the State. Juror Spencer was then examined by defense counsel. The material portion of this examination is quoted below.

"Q.  . . . if Billy and Eddie McRae testified against my client, but all of the evidence taken together showed that the truth was elsewhere, would you rule against the McRaes if the facts prove that to be true?

"A.  Rule against them?

"Q.  That is, against whatever the McRaes say if the facts prove that they are in fact different from what they say they are?

"A.  I would not go against them.

"Q.  You would not go against the McRaes? Maybe you misunderstand me. If either Eddie or Billy McRae takes the stand and testifies to some item, some evidence, against my client, but all the evidence that is brought out at the trial tends to prove something different from what they say?

"A.  That's right.

"Q.  Would you believe and hold for that which was brought out on the whole or you just believe whatever the McRaes said?

"A.  I just believe —

"Q. Believe whatever they say?

"A. That's right."

At this point, defense counsel challenged Juror Spencer for cause. To this challenge, the court said, "No." In explanation of this ruling, the court stated in substance that defense counsel, in asking whether the juror would or would not believe the McRae boys, failed to take into consideration that a juror may believe *all* of what a witness says, or *part* of what a witness says, or *none* of what a witness says. Thereafter, speaking to defense counsel, the court said: "Now, I suggest that you question him a little further with regard to whether he could give — well, I shall let you select — "

Defendant noted formal objection to the court's refusal at that time to grant challenge for cause. Thereafter, in deference to the court's suggestion, defense counsel resumed his examination of Juror Spencer. The record thereof is quoted below.

"Q. Mr. Spencer, how well do you know Eddie and Billy?

"A. I know them pretty good, fact, I have been knowing them quite a while.

"Q. If Eddie or Billy told you a certain thing was true, would you believe what they told you?

"A. Well, they tell — I sure would, if they say anything to be true.

"Q. And regardless of what anybody else would say, you'd believe what Eddie and Billy would tell you?

"A. If I didn't know no better.

"Q. The fact you are kin to them, you would not have reservations in rendering a verdict adverse to what they say?

"A. No — ask that question again.

"Q. Well, would it embarrass you to return a verdict against the testimony of what they would have to say in court?

"A. That's right.

"Q. If the verdict was opposite of what they had testified to?

"A. That's right.

"Q. Would that embarrass you?

"A. No.

"Q. You could meet them or their kinfolks the next day and it

wouldn't have any effect on you, the fact you ruled your verdict was adverse to what they testified to?

"A.  No.

"Q.  It wouldn't have any effect on you?

"A.  No.

"CLERK:  Juror look upon the prisoner, prisoner look upon the juror, do you like him?

"MR. DEANE:  No."

At the conclusion of this examination, defendant again excepted to the court's failure to grant his challenge for cause of Juror Spencer.

The State's case rests on the testimony of Billy and Eddie McRae. Absent their testimony, the evidence against defendant was insufficient for submission to the jury.

In determining whether Juror Spencer was subject to challenge for cause, consideration must be given (1) to the relationship between Spencer and the McRae brothers, and (2) to the relationship of the McRae brothers to the murder of Quick and the trial of defendant therefor.

**[5]**  Spencer had known the McRae brothers, his second cousins, "about 15 or 20 years." Second cousins are related in the sixth degree of kinship. See G.S. 104A-1.

**[6]**  In this jurisdiction, a juror, who is related to the defendant by blood or marriage within the ninth degree of kinship, is properly rejected when challenged by the State *for cause* on that ground. *State v. Perry,* 44 N.C. 330; *State v. Potts,* 100 N.C. 457, 461, 6 S.E. 657, 658; *State v. Levy,* 187 N.C. 581, 586, 122 S.E. 386, 389; McIntosh, North Carolina Practice and Procedure, § 555(6). An earlier rule is referred to by Nash, C.J., in *Perry,* as follows: *"Lord Coke* says that relationship is a good cause of principal challenge, 'no matter how remote soever, for the law presumeth that one kinsman doth favor another before a stranger.' Thomas's Coke, 3 Vol., 518."

In *State v. Tart,* 199 N.C. 699, 155 S.E. 609, the opinion of Brogden, J., implies that the defendant had the right to challenge for cause a juror who was related within the seventh degree to the prosecuting witness. The prosecution was for carnal knowledge of a girl under sixteen years of age. The juror had made no reply when counsel for defendant stated: "If there is any member of the jury related to the prosecutrix by blood or marriage, please let that fact be known

and excuse himself." After the jury had returned a verdict of guilty, this juror disclosed that, although he had not recognized his relationship to the prosecuting witness when the jury was being selected, he became aware of their relationship before any evidence was introduced. Notwithstanding the court found the juror was not prejudiced, the cause was "remanded to the Superior Court for a finding as to whether the defendant or his counsel was misled, and if the judge shall find that the defendant or his counsel was misled, the judgment should be set aside; otherwise to remain in full force and effect."

[7, 8]    We do not hold that relationship within the ninth degree between a juror and a State's witness, standing alone, is legal ground for challenge for cause. This is in accord with the weight of authority in other jurisdictions. Annotation, "Relationship to prosecutor or witness for prosecution as disqualifying juror in criminal case," 18 A.L.R. 375; 31 Am. Jur., Jury § 192; 50 C.J.S., Juries § 218(b)(1). Even so, where such relationship exists and is known and recognized by the juror, a defendant's challenge for cause should be rejected only if it should appear clearly that, under the circumstances of the particular case, the challenged juror would have no reason or disposition to favor his kinsman by giving added weight to his testimony or otherwise. Ordinarily, if the testimony of the witness will be directed to proof of some formal matter or to some minor facet of the case, there would be no substantial basis for challenge for cause. Here we are considering a radically different factual situation.

[9]    In addition to (1) the fact that the McRae brothers were kinsmen of Juror Spencer, and (2) the fact that the State's case depended upon their testimony, each of the McRaes was also under indictment for the murder of Braxton Crawford Quick. The record does not show what had occurred with reference to the disposition, if any, of their cases prior to their use as State's witnesses.

It is unnecessary to set forth the testimony of the McRaes on which the conviction of defendant was based. It is sufficient to note they testified they and defendant had been together prior to the robbery-murder of Quick; that shortly thereafter the three left the scene of the robbery-murder and traveled all night in Eddie's car to Washington, D. C.; and that, after the robbery-murder, each of the McRaes received money from defendant. In gist, their testimony pointed to defendant as the robber-killer and tended to minimize their own culpability. Under these circumstances, it would have been reasonable for Juror Spencer to believe that acceptance of the McRae testimony would or might be advantageous to his kinsmen in the disposition of their own cases.

We reach the conclusion that the court erred in refusing to grant defendant's challenge for cause of Juror Spencer. When all factors set forth above are considered, we hold there was no basis for a finding, if such had been made, that Juror Spencer was acceptable as a disinterested and impartial juror.

[13]    After exhausting his fourteen peremptory challenges, inclusive of the one used to challenge Juror Spencer, the court refused to allow defendant to challenge Juror Hicks, the last juror seated.

[10, 11]    "Peremptory challenges are challenges which may be made or omitted according to the judgment, will, or caprice of the party entitled thereto, without assigning any reason therefor, or without being required to assign a reason therefor." 50 C.J.S., Juries § 280(a). Accord: *Freeman v. Ponder*, 234 N.C. 294, 302, 67 S.E. 2d 292, 298; 31 Am. Jur., Jury § 229. G.S. 9-21 conferred upon defendant the right to challenge fourteen jurors "peremptorily *without cause.*" (Our italics.)

[12]    Numerous decisions of this Court, *e.g., State v. Dixon*, 215 N.C. 438, 440, 2 S.E. 2d 371, 372, hold that a defendant has not been prejudiced by the acceptance of a juror who is challenged for cause and the cause is disallowed unless he exhausts his peremptory challenges before the panel is completed. Other decisions, *e.g., Carter v. King*, 174 N.C. 549, 94 S.E. 4, hold that a defendant, in order to preserve his exception to the court's denial of a challenge for cause, must (1) exhaust his peremptory challenges *and* (2) thereafter assert his right to challenge peremptorily an additional juror. These rulings are plainly and succinctly summarized in the first headnote in *Carter v. King* (174 N.C. 549), which epitomizes the decision in that case, as follows: "Where the court has refused to stand aside a juror challenged for cause, and the party has then peremptorily challenged him, in order to get the benefit of his exception he must exhaust his remaining peremptory challenges, and then challenge another juror peremptorily to show his dissatisfaction with the jury, and except to the refusal of the court to allow it."

In *Oliphant v. R. R.*, 171 N.C. 303, 88 S.E. 425, the plaintiff challenged for cause Juror Darden. The court overruled the challenge. The plaintiff excepted and then challenged Juror Darden peremptorily. In so doing, the plaintiff exhausted the last of the four peremptory challenges then allowed him by statute. Thereafter, the plaintiff challenged peremptorily Juror Clayton. The court denied the challenge, holding the plaintiff's peremptory challenges had been exhausted. The plaintiff excepted to this ruling. This Court held the

denial of defendant's challenge for cause of Juror Darden was erroneous and therefore the peremptory challenge the defendant was required to use to excuse Juror Darden should not have been considered. This Court held further that the plaintiff had been prejudiced and was entitled to a new trial because of the court's refusal to permit plaintiff to challenge peremptorily Juror Clayton. The rationale of decision is set forth in the following excerpt from the opinion of Brown, J.: "If the plaintiff had not attempted to challenge peremptorily after Darden had been stood aside by a peremptory challenge, he could not review the ruling of the judge upon the cause assigned, for the error would have been harmless. *S. v. Cockman,* 60 N.C. 485. But inasmuch as he afterwards challenged Clayton peremptorily, and the court erroneously held that his peremptory challenges had been exhausted with Darden, the ruling was not harmless, for it deprived plaintiff of one peremptory challenge. But it is contended that plaintiff challenged Clayton without any real objection to the juror, solely to give him the right to review the ruling of the court in respect of Darden's eligibility. A party's reason for challenging a juror peremptorily cannot be inquired into. The law gives the litigant the right to object to a number of jurors without assigning cause. *Dupree v. Ins. Co.,* 92 N.C. 419."

In *State v. Avant,* 202 N.C. 680, 163 S.E. 806, the defendant was convicted of murder in the first degree and judgment imposing a death sentence was pronounced. The defendant had challenged for cause Juror McMillan. The court overruled the challenge. The defendant excepted and then challenged peremptorily Juror McMillan. Thereafter, the defendant challenged peremptorily Juror Currie. The court denied this challenge on the ground the defendant had exhausted his peremptory challenges. The defendant excepted to this ruling. This Court held the denial of the defendant's challenge for cause of Juror McMillan was error and therefore the peremptory challenge the defendant was required to use to excuse Juror Currie should not have been considered. The defendant was awarded a new trial. The ground of decision is succinctly stated in this final paragraph from the opinion of Brown, J.: "For the error of the judge in refusing to allow defendant's peremptory challenge to the juror, N. A. Currie, we must hold that defendant is entitled to a New trial."

In *Bank v. Oil Mills,* 150 N.C. 683, 64 S.E. 883, and *Peanut Growers Exchange v. Bobbitt,* 188 N.C. 335, 124 S.E. 625, the appellant had exhausted his peremptory challenges and thereafter had challenged a juror for cause. In each of these cases, this Court awarded a new trial on the ground the trial judge had erroneously

denied the challenge for cause. The rationale of these decisions is in accord with *Oliphant* and *Avant*.

If the court had allowed defendant an additional peremptory challenge, that is, defendant's challenge peremptorily of Juror Hicks, it would seem that this would have rendered harmless any error in the refusal of the court to allow defendant to challenge for cause Juror Spencer. See Annotation, "Effect of allowing excessive number of peremptory challenges," 95 A.L.R. 2d 957, 977-978.

[13]   In accordance with our decisions in *Oliphant v. R. R., supra,* and in *State v. Avant, supra,* and in approval of the rationale of those decisions, we hold that the court's refusal to allow defendant to challenge peremptorily Juror Hicks constituted a denial of defendant's clear statutory right and entitles him to a new trial.

New trial.