STATE OF NORTH CAROLINA v. ELTON RAY PARRISH

No. 768SC817

(Filed 6 April 1977)

**1. Jury § 7— juror's beliefs as to guilt— challenge for cause**

The court did not err in the denial of defendant's challenge for cause of a juror who stated that he felt that persons arrested or charged with crimes were probably guilty and that if he thought defendant was guilty he would vote to convict the defendant even if he had a reasonable doubt where, in response to questions by the court, the juror thereafter stated that he would follow the court's instructions and would require the State to prove all elements of the crime beyond a reasonable doubt if the court so instructed.

State v. Parrish

2. **Criminal Law § 75— confession — waiver of counsel — no custodial interrogation**

The trial court properly found that defendant expressly waived his right to counsel prior to interrogation where there was evidence on *voir dire* tending to show that defendant was given the *Miranda* warnings, defendant told officers he would tell them all he knew, defendant asked whether he could obtain a lawyer later if he answered questions that night and was told that he could, defendant signed a waiver form in which he stated that he did not want a lawyer, and defendant then made a confession; furthermore, defendant was not subjected to a custodial interrogation, and a waiver of counsel was not required, where defendant was questioned in his own home in the presence of his wife, and defendant was neither in custody nor deprived of his freedom in any significant way.

APPEAL by defendant from *Small, Judge.* Judgment entered 29 April 1976 in Superior Court, WAYNE County. Heard in the Court of Appeals 15 March 1977.

Defendant was placed on trial upon a bill of indictment, proper in form, charging him with first-degree murder of Eugene Douglas Pipkin on 29 September 1975 in Wayne County.

The State's evidence tends to show that at 1:00 or 2:00 p.m. on 29 September 1975 defendant went to the restaurant where Vera Estelle Pipkin worked and asked where her son Droopy Pipkin lived. Kay Pearce testified that at about 8:15 p.m. on that same day a man drove up to her trailer while she and Droopy Pipkin were inside watching television. The man asked if Pipkin was there and Pipkin went out to talk to him. About a minute later Mrs. Pearce heard two shots fired, rushed outside, observed the car driving away rapidly, and saw Pipkin lying on the ground dead. An autopsy revealed that Pipkin died as a result of hemorrhage from two gunshot wounds in the chest. During the early morning hours of 30 September law enforcement officers went to defendant's home, and defendant confessed that he had shot Pipkin. He said that Pipkin had broken into his home while he was away; that he had gone to talk to Pipkin, but Pipkin denied breaking in; and that he then shot Pipkin. Defendant gave the officers the rifle with which he had shot Pipkin and a firearms expert determined that the two bullets found in Pipkin's body had been fired from this rifle.

Defendant offered evidence tending to show that he was away from home on 6 September 1975 and did not return home until September 26. On September 6 Droopy Pipkin came to the

trailer where defendant lived, and he would not leave when defendant's wife (Judy Parrish) told him to go away. Mrs. Parrish fired a gun at Pipkin through the trailer door, but he still did not leave. Instead, he broke into the trailer and told Mrs. Parrish: "I know you're wanting some loving." Mrs. Parrish finally left the trailer herself, taking her children with her and telling Pipkin he could have the trailer if he wanted it. Pipkin then departed, cursing as he went. On the morning of 29 September, Mrs. Parrish told the defendant what had happened. The defendant testified that he then went to the restaurant where Pipkin's mother worked in order to find out where Pipkin lived; that he drove to Pipkin's trailer that night and asked to talk to Pipkin; that when Pipkin came out, defendant pointed a rifle at him and accused him of breaking into his trailer; that Pipkin denied that he had broken into the trailer; that defendant and Pipkin argued for a brief period; that Pipkin reached into his pocket, and defendant immediately shot him; and that Pipkin had a reputation as a dangerous and violent person, and defendant believed that he might be reaching for a weapon.

Before defendant's confession was admitted in evidence, a *voir dire* hearing was held. On *voir dire* the State offered evidence tending to show that when the officers went to defendant's home, they thought Gary Foreman had killed Pipkin, and they merely wanted to obtain information from defendant. When they first saw defendant, one of them, N. R. Uzzell, asked: "Elton, do you know why we're here?" Defendant answered: "Because I shot Droopy." Uzzell told him not to say anything until he was advised of his constitutional rights, and he proceeded to advise defendant of his rights. When Uzzell asked defendant whether he wanted a lawyer, defendant answered: "I will tell you all I know." Defendant asked whether he could obtain a lawyer later if he answered questions that night, and Uzzell said he could. Defendant signed a waiver form in which he stated that he understood his rights; that he was willing to make a statement; and that he did not want a lawyer. He then gave his confession. Officer Uzzell testified that when the officers talked to defendant, he was in control of his faculties and not under the influence of alcohol.

Defendant offered evidence on *voir dire* tending to show that when the officers advised him of his right to counsel, they told him that a lawyer could not be appointed for him that

night, and that he answered: "I'll need one when the time comes"; that defendant was "very much tipsy" when he shot Pipkin; that he kept on drinking after the shooting; and that he was still tipsy when he talked to the officers. The court held the confession admissible.

The jury found defendant guilty of voluntary manslaughter, and a prison sentence was imposed. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, Jr., for the State.*

*Taylor, Allen, Warren & Kerr, by Robert D. Walker, Jr., for the defendant.*

MARTIN, Judge.

[1]  Defendant has grouped his thirty-four assignments of error into six arguments in his brief. He first contends the court erred by failing to excuse one of the jurors, Juror Dunbar, for cause. During the jury selection, Mr. Dunbar stated that he felt that persons arrested or charged with crimes were probably guilty, and that if he thought the defendant was guilty then he would vote to convict the defendant even if he had a reasonable doubt. In response to questions by the court, however, Mr. Dunbar stated that he would follow the court's instructions and that he would require the State to prove all the elements of the crime beyond a reasonable doubt if the court so instructed. The court then found the juror qualified. Later during the jury selection defendant proceeded to exercise his fourteen peremptory challenges and was denied an additional peremptory challenge of Juror Hooks. By exhausting his peremptory challenges and thereafter asserting his right to challenge peremptorily an additional juror, defendant preserved his exception to the denial of his challenge for cause of Juror Dunbar. *State v. Boyd,* 287 N.C. 131, 214 S.E. 2d 14 (1975); *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969).

In the case of *State v. Dixon,* 215 N.C. 438, 440, 2 S.E. 2d 371, 372 (1939) our Supreme Court held that "[t]he finding that a juror is a fair one, though he has formed and expressed an opinion, is a matter in the discretion of the trial judge and is not reviewable on appeal." (Citation omitted.) See also

*State v. Terry,* 173 N.C. 761, 92 S.E. 154 (1917). Moreover, it has been stated that:

> "Admission that he held an opinion before, or at the time of, the voir dire examination, in the course of which a juror states that he can disregard such opinion, listen to the evidence, and apply to it the instructions of the court, and that he can and will be fair and impartial in the trial of the issue, brings to play the trial judge's exercise of his discretion." 47 Am. Jur. 2d *Jury* § 305 (1969).

In the case at bar, there is no showing of prejudice against defendant on the part of Juror Dunbar. Although his answers during questions by defendant's counsel reveal some concern regarding the effect of defendant's having been arrested and charged, this point was pursued and clarified during further questioning by the trial judge. Dunbar's responses to the judge's questions clearly sustain the implied finding by Judge Small that Dunbar would still require the State to prove each element of the crime beyond a reasonable doubt. *State v. Boyd, supra.* This assignment of error is therefore overruled.

**[2]** The defendant next contends the court erred in allowing the defendant's extrajudicial statement in evidence. He argues that the record does not reflect that defendant expressly waived his right to counsel and that the evidence reflects that the defendant in fact requested that he be allowed counsel. Defendant relies on *State v. Robbins,* 4 N.C. App. 463, 167 S.E. 2d 16 (1969). This case is distinguishable from the one under consideration. In the *Robbins* case the defendant was told by the arresting officer that "we have no way of giving you a lawyer but one will be appointed for you if you wish *if and when you go to court.*" It is understandable that a statement of this kind may well cause a defendant to understand that he was not entitled to court-appointed counsel prior to trial.

In the case at bar, the judge's conclusions that the defendant's oral statements were admissible are clearly supported by the *voir dire* evidence of record. All the evidence on *voir dire* tends to show that the defendant was first advised of his constitutional rights as prescribed by the United States Supreme Court in *Miranda,* and that he was asked: "Do you want a lawyer?" The defendant responded: "I'll tell you all I know" and stated that he did not want a lawyer at that time. The officers then proceeded to explain that if he decided to answer

questions then he had a right to stop talking at any time. The defendant then told the officers that he understood all his rights and that he wished to talk to the officers and answer questions right then. At that point, the officers read to defendant a waiver statement to the effect that:

> "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. *I do not want a lawyer.* [Emphasis added.] I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

The defendant then read and signed this waiver in the presence of three witnesses.

The evidence indicates that the defendant understood his right to counsel and his right to remain silent; that he did not indicate a desire to talk to an attorney before making a statement or to stop talking during the course of his statement; and that the same was freely, voluntarily and understandingly made while several witnesses, including the defendant's wife, were present. We therefore find no error in the trial court's conclusion that: "The defendant purposely, freely, knowingly and voluntarily waived each of his rights. . . . " Thus, the defendant intelligently and understandingly rejected the offer of counsel.

Furthermore, as the State's brief points out, *Miranda* warnings and waiver of counsel are only required when a defendant is being subjected to custodial interrogation. *State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973). A custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). *Miranda* warnings are thus required only when there has been such a restriction on a person's freedom as to render him "in custody." See *Oregon v. Mathiason*, _____ U.S. _____, 97 S.Ct. 711, 50 L.Ed. 2d 714 (1977).

In the case at bar, the evidence is undisputed that defendant was questioned in his own home in the presence of his wife. At the time he gave his statement to the officers, he was neither under arrest nor in custody and he was neither

detained nor deprived of his freedom in any significant way. He was not placed under arrest until after he confessed orally to his participation in the offense and after he went to the Wayne County Sheriff's Department several hours later. Clearly, defendant made the incriminating statements in response to interrogation, yet he was neither in custody nor deprived of his freedom in any significant way.

Defendant's remaining arguments have been carefully reviewed and found to be without merit.

No error.

Judges MORRIS and VAUGHN concur.