STATE OF NORTH CAROLINA v. MARK FERGUSON

No. 155

(Filed 15 December 1971)

1. **Criminal Law § 169; Homicide § 15— admission of testimony not responsive to the solicitor's question — test of relevancy**

   Testimony by State's witness that on the night of the homicide she saw the defendant sharpening his knife and heard him say, "That'll do the work," which testimony was given in response to the solicitor's question, "Where did you see him," *held* properly admitted in evidence although not responsive to the solicitor's question, since the answer was relevant to the homicide prosecution.

2. **Criminal Law §§ 162, 169— motion to strike — admission of unresponsive testimony — test of relevancy**

   If an unresponsive answer produces irrelevant facts, they should be stricken and withdrawn from the jury; however, if the answers bring forth relevant facts, they are nonetheless admissible because they are not specifically asked for or go beyond the scope of the question.

3. **Homicide §§ 15, 17— admissibility of evidence — defendant's criminal intent**

   Although the solicitor had withdrawn the charge of first degree murder from the jury, it was permissible to introduce testimony tending to show that defendant was sharpening his knife on the night of the homicide and saying, "That'll do the work," such testimony being relevant to show defendant's criminal intent and to refute his claim of self-defense.

4. **Criminal Law § 138— amount of sentence — credit for psychiatric evaluation in State hospital**

   A defendant is not entitled to credit for time spent undergoing psychiatric evaluation in the State hospital to determine his competency to plead and stand trial.

ON *certiorari* in lieu of appeal by defendant from *Martin (Harry C.) J.,* March 22, 1971 Session BUNCOMBE Superior Court. In this criminal prosecution the defendant, Mark Ferguson, by grand jury indictment, was charged with the first degree murder of Tony Sluder.

The killing occurred in Buncombe County on July 11, 1970. On July 29, 1970, the defendant's privately employed counsel filed a motion in the superior court requesting the commitment of the defendant to Dorothea Dix Hospital for psychiatric evaluation. On July 30, 1970, Judge Beal of the superior court ordered the commitment. On September 5, 1970, Dr. Laczko filed a report

certifying he found, " . . . (N)o evidence of insanity or any other mental disturbance which might interfere with this patient's ability to plead to the Bill of Indictment."

At the time of the defendant's arraignment in the superior court on March 22, 1971, the solicitor announced the State would not ask for a verdict on the capital felony charged in the indictment, but would ask for a guilty verdict of murder in the second degree or manslaughter as the evidence may warrant.

The State's evidence disclosed the deceased (Tony Sluder), the defendant, Gene Garren, Champ Rice, Jr. and three girls met at the Casa Loma in Asheville. There was evidence of both liquor and beer drinking. An argument developed between Rice and the deceased on one side and the defendant and Garren on the other. After the argument, the deceased, Rice, Molly Montez and Sheila Allison left in the latter's automobile to go to the Land-of-the-Sky Restaurant. On the way they passed the defendant and Gene Garren hitchhiking. Sheila stopped her car, but the deceased and Rice prevented the defendant and Garren from entering the automobile. Either the deceased or Rice kicked the defendant. The automobile party, after driving to the restaurant, went to the Montez apartment. The defendant and Garren were waiting at or near the apartment.

The defendant and Rice had some words with reference to the occurrence when Sheila stopped the car on the road. Rice testified that the defendant inquired who had "busted his mouth." Rice said he did. The defendant then assaulted him with a knife. "I stepped back and he (defendant) went on and cut Tony. . . . Tony had not struck, hit at or made any pass at Mark Ferguson at all at the time he was cut. After Tony said, I am cut, he (the deceased) got his knife out of his pocket. He handed me the knife. . . . Tony had not gotten his knife out prior to that time. . . . I think the knife was closed." Tony was taken to the hospital and pronounced dead on arrival. The pathologist testified that death resulted from the stab wound.

The State's witness, Mrs. Tinsley who lived next door to the Montez apartment, testified as a witness for the State. She said she had seen the defendant at the apartment several times. She was asked these questions by the solicitor:

Q. "Did you see him on the 11th of July?"

A. "Yes."

Q. "Where did you see him?"

A. " . . . (I)t was pretty late in the afternoon was when I saw him out there sharpening his knife, he came out the door with a paring knife in his hand and he went out to the third step he did, you know, right in front of my door on my sidewalk and sharpened it. He said, 'That'll do the work.' "

The defendant objected. The objection was overruled. Defendant's Exception No. 1.

Q. "Then after he went out there, where did he go?"

A. "Well, he come down to my door and sharpened it and said 'That'll do the work,' and that is all I know."

The defendant objected, moved to strike, the motion was denied and that is defendant's Exception No. 2.

Later in her testimony Mrs. Tinsley testified without objection: "I didn't see him leave after I saw him sharpening his knife. . . . On the same night I heard the disturbance I saw Mark sharpening the knife and that was the night the man was killed."

The defendant and his witness, Garren, testified that the deceased and his companion, Rice, were responsible for all the difficulties of the evening; that they were the aggressors at all times and that they assaulted and inflicted serious injuries on both the defendant and Garren. At the time the deceased received his wounds he was assaulting the defendant with a knife. The defendant attempted to run. He stated there was a paring knife lying by the chair where he had been sitting. He picked up the knife and started running from the deceased. " . . . I broke away from him, he sorta went backwards and I took off running . . . . " He later heard that "one of the boys was cut bad." The defendant offered evidence of his good character.

The jury found the defendant guilty of voluntary manslaughter. The court imposed a prison sentence of 15 to 18 years from which the defendant appealed.

*Robert Morgan, Attorney General by Russell G. Walker, Jr., Assistant Attorney General for the State.*

*Riddle and Shackelford, Attorneys by Robert E. Riddle for defendant appellant.*

State v. Ferguson

HIGGINS, Justice.

The State's evidence was sufficient to make out a case of murder. The defendant's evidence tended to support his plea of self-defense. The jury, finding the truth to lie in the middle ground, convicted the defendant of vountary manslaughter. The court imposed a sentence which approached the maximum provided by law for manslaughter. G.S. 14-18.

[1] The defendant's Assignments of Error Nos. 1 and 2 involve the court's failure to exclude the testimony of Mrs. Tinsley with reference to the defendant's action in sharpening his knife and his statement, "That'll do the work." The defendant's objection to the testimony is twofold. First, the witness' statement was not responsive to the solicitor's question; and second, the evidence tended to show premeditation which was eliminated as an element of the charge by the solicitor's announcement that the State would prosecute for second degree or manslaughter only.

It is true that Mrs. Tinsley's testimony was not responsive to the solicitor's question. No doubt she and the solicitor had conferred and both she and the solicitor knew the State's purpose in having her as a witness was to show the defendant sharpened a knife and made the statement that it would do the work prior to his using it with the fatal result. The solicitor's first question was intended to place the defendant on the scene. Obviously the next question would involve the sharpening of the knife and the statement that it would do the work. Mrs. Tinsley, not being familiar with court techniques and niceties, did not wait for the second question. Should the court have stricken the answer and waited for the next question which would produce the identical answer?

[2] Whether an answer is responsive to a question is not the ultimate test on a motion to strike. If an unresponsive answer produces irrelevant facts, they may and should be stricken and withdrawn from the jury. However, if the answers bring forth relevant facts, they are nonetheless admissible because they are not specifically asked for or go beyond the scope of the question. *In re Tatum,* 233 N.C. 723, 65 S.E. 2d 351; *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225; Wigmore on Evidence, Third Edition, Vol. III, Sec. 785, p. 160; Stansbury, N. C. Evidence, 2d § 77. The Assignments of Error based on Exceptions Nos. 1 and 2 are not sustained.

[3] The defendant by Assignment No. 3 challenges the admission of Mrs. Tinsley's testimony with regard to the knife on the ground it tended to support the charge of murder in the first degree which the solicitor by his announcement had removed from the case. The solicitor's announcement the State would not prosecute for the capital felony, but for a lesser included offense would not render incompetent any pertinent evidence bearing on the defendant's guilt. The evidence the defendant sharpened his knife, making it ready to "do the work" at a time before the fatal encounter, had bearing on the defendant's criminal intent and it refuted his evidence that he picked up the knife from beside his chair at a time the deceased was assaulting him. The solicitor's announcement the State would not prosecute for the capital felony did no more than preclude the State thereafter from submitting to the jury the issue of murder in the first degree. *State v. Allen,* 279 N.C. 115, 181 S.E. 2d 453; *State v. Peeden,* 272 N.C. 494, 158 S.E. 2d 615; *State v. Miller,* 272 N.C. 243; 158 S.E. 2d 47; *State v. Pearce,* 266 N.C. 234, 145 S.E. 2d 918.

[4] The defendant's final contention is the court should have, but failed to give him credit for the time he spent in the hospital for psychiatric evaluation under the court's order. Our cases hold the defendant is entitled to credit for time served on a prior sentence for the same offense. We find no authority where credit is allowed for time in the hospital to determine legal competence to plead to the indictment and to conduct the defense. *State v. Weaver,* 264 N.C. 681, 142 S.E. 2d 633; *State v. Foster,* 271 N.C. 727, 157 S.E. 2d 542; *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28; *State v. Walker,* 277 N.C. 403, 177 S.E. 2d 868.

The examination of the record fails to disclose any reasonable ground upon which to base a new trial. In the trial, verdict, and judgment there is in law

No error.