STATE OF NORTH CAROLINA v. HAYWOOD LINDALE PEELE

No. 110

(Filed 10 May 1972)

1. Constitutional Law § 31; Criminal Law § 80— access to evidence —
witnesses favorable to defendant — statements by witnesses — produc-
tion by solicitor

The trial court did not err in the denial of defendant's motion
pursuant to G.S. 15-155.4 that the solicitor furnish defendant (1) the
names and addresses of all witnesses known to the State who might
offer testimony favorable to defendant, and (2) copies of written
statements or transcripts of oral statements made by any witness,
since the statute does not contemplate that the solicitor be required to
furnish such information.

2. Criminal Law § 87— leading questions

The trial court did not err in allowing the solicitor to ask leading
questions in this homicide and armed robbery prosecution.

3. Criminal Law §§ 162, 169— unresponsive testimony — test of relevancy

If an unresponsive answer produces irrelevant facts, it should be
stricken and withdrawn from the jury; however, if an answer brings
forth relevant facts, it is admissible even though not specifically
asked for or beyond the scope of the question.

4. Criminal Law § 80— irrelevancy of letter

The trial court in an armed robbery and homicide prosecution
properly excluded as irrelevant a letter written to defendant by an
employment agency in New York forty-two days after the crimes
which acknowledged defendant's application for a job without indicat-
ing any date on which the application was made, the letter having
contained nothing from which any inference may be drawn as to de-
fendant's whereabouts on the date of the crimes.

5. Homicide § 21— murder in perpetration of armed robbery — sufficiency
of evidence

The State's evidence was sufficient to be submitted to the jury
on the issue of defendant's guilt of murder committed in the perpetra-
tion of an armed robbery where it tended to show that defendant
and a companion entered a store, that a commotion in the store was
heard, that defendant and his companion ran from the store carrying
a cash register, that the store proprietor had been shot and killed
with a .22 caliber pistol, that defendant and his companion took the
cash register to another person's home and divided the money, and
that defendant's companion had borrowed a .22 caliber pistol just
before the robbery and returned it shortly thereafter.

6. Criminal Law § 26; Homicide § 31— murder in perpetration of robbery
— separate punishment for robbery — double jeopardy

Where defendant's conviction of felony-murder was based upon
a jury finding that the murder was committed in the perpetration

---

State v. Peele

---

of an armed robbery, no separate punishment can be imposed for the armed robbery.

APPEAL by defendant from *Clark, J.,* January 17, 1972 Criminal Session, CUMBERLAND Superior Court.

These criminal prosecutions were based on grand jury indictments as follows. The bill in Case No. 71 CR 24751 is here quoted:

"THE JURORS FOR THE STATE UPON THEIR OATH Present, that Haywood L. Peele late of the County of Cumberland on or about the 12th of July, 1971, with force and arms at and in the county aforesaid did unlawfully, wilfully and feloniously having in his possession and with the use and threatened use of firearms and other dangerous weapons, implements, and means, to wit: a pistol, whereby the life of William F. Icenogle was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal and carry away Three Hundred Dollars ($300.00) in money, to wit: United States Currency of the value of Three Hundred Dollars ($300.00) from the presence, person and possession of William F. Icenogle, property of William F. Icenogle trading as Square Deal Package Store, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

/s JACK A. THOMPSON
Solicitor"

The bill in case No. 71 CR 24752 is likewise quoted:

"THE JURORS FOR THE STATE UPON THEIR OATH Present, That Haywood L. Peele late of the County of Cumberland on or about the 12th day of July, 1971, with force and arms, at and in the said county, feloniously and wilfully did kill and murder William F. Icenogle, which murder was committed in the perpetration of the crime of armed robbery, a felony, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

/s JACK A. THOMPSON
Solicitor"

---

---

The defendant was adjudged to be indigent and A. Maxwell Ruppe was appointed counsel to represent him.

After the indictments were duly returned but before arraignment, defense counsel filed a written request for discovery and moved before Judge Bailey for an order requiring the solicitor to make available to defense counsel " . . . (T)he following information pertaining to the charges against the defendant . . . : 1. Names and addresses of witnesses known to the State who might offer testimony favorable to the defendant. 2. Copy of all written statements made by any of the witnesses signed by the witnesses now in possession of a representative of the State. 3. Copy of any unsigned statements or verbal statements, including any transcribed recording of a witnesses statement given to a representative of the State which has been reduced to writing and now in possession of the representative of the State. 4. A copy of the transcript of testimony in the case of *State v. Anthony Calloway,* 71 Cr 23574 and 71 Cr 23575 . . . on the same charge now pending against Haywood Lindale Peele."

Judge Bailey found that Anthony Calloway was also indicted both for the robbery and the murder of William F. Icenogle. The evidence was taken by the reporter at the hearing after Calloway entered pleas of guilty both to murder in the second degree and to armed robbery. Judge Bailey concluded the transcript of the Calloway hearing would enable the defendant to prepare for the trial, as the same witnesses would be used by the State. Judge Bailey ordered the Calloway transcript made available to defense counsel at the State's expense.

When arraigned the defendant entered pleas of not guilty. Twelve regular jurors and one alternate were selected and empaneled.

The State introduced evidence of which the following is a summary. Mrs. Icenogle, wife of the victim, testified that she left her husband alone at the store about 9 o'clock on the night of July 12, 1971. The cash register contained $200.00 to $300.00 in cash and some checks. The State introduced it in evidence.

A State's witness stopped at a telephone booth near Mr. Icenogle's store a few minutes before 10 o'clock on the night of July 12th. He heard a commotion in the store, saw two men leave running, went inside, and found Mr. Icenogle on the floor

dying from gunshot wounds. Another eyewitness saw the two men running from the store carrying a cash register. Soon after they passed out of his view he heard an automobile door slam and heard the car drive away. The witness identified the defendant and Calloway as the men leaving the store with the cash register.

Catherine Winborn testified that she was well acquainted with Anthony Calloway, Haywood Lindale Peele, and Jake Gooding. Around 12 o'clock on the night of July 12th these three men came into her house through the back door carrying a cash register. They opened it in her house, took a quantity of money from it and left. A few days before, Anthony Calloway had borrowed her twenty-two calibre pistol. Shortly thereafter, he returned it. She had heard about the shooting and turned the pistol over to one of her friends who hid it under a trash can nearby. After the officers made inquiry, Catherine Winborn and Howard Jenkins informed the officers about hiding the pistol. A search disclosed it had been removed.

Jake Gooding, a witness for the State, testified that on the night of July 12th around 10 o'clock, or a little before, he drove his automobile to a place a short distance from the Icenogle store and that his two passengers, Anthony Calloway and Haywood Peele, left his automobile. He saw them go to the Icenogle store and in a few minutes return with the cash register. He went with them to Catherine Winborn's house where Calloway opened the safe and gave him $20.00. Calloway and Peele then divided the remainder of the money which was around $300.00. The officers took possession of the cash register. Mrs. Icenogle identified it as belonging to her husband and it was introduced in evidence.

After the shooting, the body of Mr. Icenogle was taken to the hospital. An autopsy was performed which disclosed that he had died from a twenty-two calibre pistol bullet which had pierced his heart.

At the close of the State's evidence the defendant's motion for a directed verdict of not guilty was overruled.

The defendant testified that he was well acquainted with Calloway and Gooding. He frequently saw them at the home of Mamie Gaines. They often met together and had social drinks.

He said that he left Fayetteville on the night of July 11th, went to New York and remained there until a relative wrote him about the robbery and death of Icenogle. He came back to Fayetteville and surrendered because he was not guilty. He called Anthony Calloway as a witness in his behalf. Calloway testified that he had already pled guilty to the robbery and second degree murder in the killing of Icenogle; that the defendant Peele was not with him at all and had nothing to do with the robbery or killing; that Gooding drove him to the place near the store and waited while he went to the store alone, shot Icenogle, and took the cash register to the home of Catherine Winborn. He admitted that he and Peele had occupied a cell together in jail before the trial.

The defendant called Officer Truitt who testified that he had a conversation with State's witness Catherine Winborn who told him that Calloway and Gooding brought the cash register to her house, opened it, and divided the money and that the defendant Peele was not with them.

The defendant sought to introduce in evidence a letter from an employment agency in New York addressed to him at his uncle's residence in Brooklyn. The letter, dated August 24, 1971, acknowledged the receipt of his application for a job. The court excluded the letter as irrelevant.

The jury returned a verdit finding the defendant guilty of murder in the first degree and recommended life imprisonment on the murder charge. The jury also returned a verdict of guilty on the robbery charge. From the judgment of life imprisonment on the murder charge and a sentence of not less than twenty-five nor more than thirty years on the robbery charge, the defendant appealed assigning errors.

*Robert Morgan, Attorney General by Walter E. Ricks III, Associate Attorney, for the State.*

*A. Maxwell Ruppe and Paul G. Mallonee for defendant appellant.*

HIGGINS, Justice.

[1] The bills of indictment charged armed robbery and murder committed in the perpetration of the robbery. The defendant's witness Calloway had already been tried and entered pleas of

guilty on the identical charges. The State's pre-sentence testimony on the charges against Calloway was transcribed and a copy was delivered to the defense counsel in response to the motion for discovery filed at the beginning of the hearing. The disclosure statute, Chapter 1064, Session Laws of 1967, now G.S. § 15-155.4, was enacted after this Court's decision in *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334. According to the statute, a pre-trial order may require the solicitor to produce for inspection and copy "specificaly identified exhibits" to be used in the trial and to permit defense counsel to examine "specific expert witnesses" who may be called. The statute does not contemplate anything resembling the demand made by defense counsel in this case. The purpose of the statute is to enable a defendant to guard against surprise documents and surprise expert witnesses. Nothing of that nature was shown to be available or its use contemplated in this case. The order to produce a copy of the pre-sentence hearing would appear to have given defense counsel sufficient information to enable him to guard against surprises. The Assignment of Error No. 1 is not sustained.

[2]  By defendant's Assignments of Error Nos. 3 and 4, the defendant challenges the solicitor's leading questions. Examination discloses that questions, if on occasion somewhat leading, were intended to facilitate the hearing. The court was well within its prerogative in allowing them. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. Clanton,* 278 N.C. 502, 180 S.E. 2d 5; *State v. Pearson,* 258 N.C. 188, 128 S.E. 2d 251. The Assignments of Error Nos. 3 and 4 based on leading questions are not sustained.

[3]  The Defendant's Assignment of Error No. 6 is addressed "To the court permitting Detective W. A. Newsome, a State's witness, on cross-examination to volunteer information that was not in response to any question." The questions related to the officer's conversations with a witness. It appears that these conversations had occurred on more than one occasion between the officer and Gooding. They concerned the identity of the two men whom he had taken to and from the Icenogle store and the home of Catherine Winborn. The witness in his reply to questions had gone somewhat beyond the answers to the last question. In a long trial it is not unusual for a witness to give testimony somewhat beyond the precise form of a question.

"Whether an answer is responsive to a question, is not the ultimate test on a motion to strike. If an unresponsive answer produces irrelevant facts, they may and should be stricken and withdrawn from the jury. However, if the answers bring forth relevant facts, they are nonetheless admissible because they are not specifically asked for or go beyond the scope of the question." *State v. Ferguson,* 280 N.C. 95, 185 S.E. 2d 119; *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225. Assignment of Error No. 6 is not sustained.

[4] Defense counsel in the brief and in the oral argument stressfully contends that the court committed prejudicial error by refusing to admit in evidence the letter dated August 24, 1971, addressed to the defendant at 50 Gates Avenue, Brooklyn, New York. The letter was written forty-two days after the robbery and related to defendant's application for a job without indicating any date on which the application was made. Hence it contained nothing from which any inference may be drawn as to the whereabouts of the defendant on July 12, 1971. The letter was properly excluded as irrelevant. We note the defendant's objection to the letter solely because of the stress and importance defense counsel seemed to attach to it.

[5] Defendant's 8th and final Assignment of Error challenges the sufficiency of the evidence to survive his motion to dismiss at the close of all the evidence. On this motion the State's evidence is deemed to be true. All inconsistencies and contradictions are to be resolved in favor of the State. The defendant's evidence in contradiction is not to be considered. The evidence when properly construed makes out a strong case for the prosecution showing a murder committed in the perpetration of a robbery.

Mrs. Icenogle left her husband alone in the store at 9 o'clock. The cash register was in place. She returned at 10 o'clock in response to a call from the officers. Mr. Icenogle was dead and the cash register missing. The defendant and Anthony Calloway are shown to have entered Icenogle's store just before 10 o'clock at night. A commotion in the store was heard. Calloway and the defendant were seen running from the store carrying a cash register. They appeared at the Winborn home, opened the cash register, divided the money, and left. Just before the robbery, Calloway had borrowed Catherine Winborn's twenty-two calibre pistol. Shortly after the occurrence

he returned it. Icenogle's death resulted from a twenty-two calibre bullet. The evidence indicates that Calloway probably did the shooting, but both he and the defendant entered the store together. They left together with the cash register and divided the contents. Both were equally guilty of the murder which one committed in the presence of the other. "Where two or more persons aid and abet each other in the commission of a crime, all being present, each is a principal and equally guilty regardless . . . of which is the actual perpetrator . . . . " Strong's N. C. Index, 2d, Vol. 2, Criminal Law, § 9. See also *State v. Aycoth*, 272 N.C. 48, 157 S.E. 2d 655; and *State v. Ham*, 238 N.C. 94, 76 S.E. 2d 346.

The evidence in its light most favorable to the State, establishes all essential elements of murder committed in the perpetration of armed robbery. *State v. Jones*, 280 N.C. 60, 184 S.E. 2d 862; *State v. Thompson*, 256 N.C. 593, 124 S.E. 2d 728; and *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431. In the trial, conviction and sentence on the charge of murder in the first degree we find no error.

[6] However, the face of the record proper requires this Court, of its own motion, to take notice of a fatal defect in the verdict and judgment in No. 71 CR 24751 charging armed robbery. Examination of the indictments, verdicts, and judgments disclose that the armed robbery charge was embraced in and made a part of the charge of murder in the first degree. Wharton's Criminal Law and Procedure, Vol. 1, Section 148, states the rule: "It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater, . . . " Many cases recognize and apply the same principle. Among them are *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666; *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892; *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496; *State v. Birckhead*, 256 N.C. 494, 128 S.E. 2d 838; and *State v. Bell*, 205 N.C. 225, 171 S.E. 50.

From the foregoing it follows as a matter of course that the judgment must be arrested in the robbery case.

In No. 71 CR 24752—No error.

In No. 71 CR 24751—Judgment arrested.