STATE OF NORTH CAROLINA v. TIMOTHY LEE CONNER

No. 804SC1175

(Filed 7 July 1981)

**1. Criminal Law § 34.7— other offenses by defendant—admissibility of evidence**
    The trial court did not err in denying defendant's motion to strike certain unresponsive testimony of the prosecuting witness which indicated that defendant had threatened him on a previous occasion, since the challenged evidence was relevant and competent to show defendant's quo animo, or state of mind or motive toward the victim at a time sufficiently proximate to com-

mission of the offense with which defendant was charged to be relevant and thus to permit its consideration by the jury.

**2. Criminal Law § 89.9— written statement of witness—no examination by defense counsel**

　　The trial court did not err in failing to allow defense counsel to examine the written statement of a witness to determine if the statement could have been used to impeach the witness.

**3. Constitutional Law § 30— witness's written statement—no disclosure by State**

　　There was no merit to defendant's contention that the trial court erred in admitting a statement written by a witness because the district attorney had failed to disclose this evidence prior to trial in response to defendant's discovery request, since the witness was not a codefendant in this case; except as provided by G.S. 15A-903 relating to statements by defendants and codefendants, pretrial disclosure of statements made by witnesses for the State is not required by the Criminal Procedure Act; the exclusionary sanction imposed by the Criminal Procedure Act for failure to comply with discovery orders is permissive rather than mandatory; and the statement was introduced for corroborative purposes only, and the essential contents of the statement were already before the jury.

APPEAL by defendant from *Rouse, Judge.* Judgment entered 21 July 1980 in Superior Court, ONSLOW County. Heard in the Court of Appeals 8 April 1981.

Defendant was indicted, tried and acquitted of the first degree murder of one Susan Kwiecien. He was indicted, tried and convicted of assault with a deadly weapon with intent to kill inflicting serious injury upon one Michael Dahl.

Evidence for the State tended to show that defendant, Robert Probeck, Chris Keithline and Michael Dahl spent a portion of the evening of 17 November 1979 at a trailer occupied by Keithline and Dahl playing strip poker with the deceased, Susan Kwiecien. After Dahl left to get some gasoline for his automobile, defendant, Probeck and Keithline all had intercourse with Ms. Kwiecien in Dahl's bedroom. Thereafter an argument between defendant, Keithline and Ms. Kwiecien ensued; and Ms. Kwiecien asked to be taken home. Defendant, Probeck, Keithline and Ms. Kwiecien left in Probeck's car and proceeded down Highway 258 to "the Match Road." At the end of the Match Road Probeck, upon defendant's instruction, turned onto a "smaller loop road." At some point on that road defendant told Probeck to stop the car and told the others that "they were going to have to kill [Ms. Kwiecien]." Ms. Kwiecien was then shot and killed with a shotgun

which belonged to Dahl. Because defendant was acquitted of the murder charge, conflicting evidence in the record as to who killed Ms. Kwiecien is not material to this appeal.

When the other men carried Keithline back to the trailer where he and Dahl resided, they discovered that Dahl had returned home. The following day defendant informed Probeck that Dahl "would have to be killed since he knew about the girl." Probeck told defendant he was scared and "wanted no part of it"; and defendant, Probeck and Keithline engaged in "further discussion . . . regarding the possible killing of Michael Dahl." Defendant and Keithline then went to Dahl's residence. Defendant had a screwdriver in his hand with which "[h]e kept sticking [Dahl] in the side." Keithline obtained a gun while defendant stayed with Dahl. Defendant told Keithline to shoot Dahl, and Keithline shot Dahl in the right side of his chest. Defendant then told Keithline to shoot Dahl again, "that he didn't kill [him]." As defendant was repeatedly telling Keithline to shoot Dahl again, Dahl managed to escape to a neighbor's house. He was hospitalized as a result of his wounds for eight or nine days.

Defendant testified in his own behalf denying that he "poked . . . Dahl with the screwdriver"; denying that he told Keithline to shoot Dahl; and denying that he knew Keithline was going to shoot Dahl.

From a judgment of imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Ben G. Irons II, for the State.*

*Gaylor and Edwards, by Jimmy F. Gaylor, for defendant appellant.*

WHICHARD, Judge.

[1]  Defendant assigns error to the court's denial of his motion to strike certain unresponsive testimony of the prosecuting witness which indicated that defendant had threatened him on a previous occasion. The district attorney asked the prosecuting witness, Dahl, the following question: "Did you have anymore conversation with [defendant] there?" The witness replied: "Yes. A little bit later he pulled a knife on me." Defendant's motion to strike the answer was denied. The witness was then asked: "How did that

happen, Mr. Dahl?" The witness responded: "In our conversation he said 'don't fuck with me or I'll kill you.'" Defendant's motion to strike was again denied.

Defendant contends the court erred in refusing to grant his motion to strike this testimony because (1) it was unresponsive; and (2) it was irrelevant and inadmissible, tending to show that defendant had committed two additional crimes, assault and communicating a threat, for which he was not on trial. As to the issue of responsiveness, in *State v. Ferguson*, 280 N.C. 95, 98, 185 S.E. 2d 119, 122 (1971), we find the following:

> Whether an answer is responsive to a question is not the ultimate test on a motion to strike. If an unresponsive answer produces irrelevant facts, they may and should be stricken and withdrawn from the jury. However, if the answers bring forth relevant facts, they are nonetheless admissible because they are not specifically asked for or go beyond the scope of the question.

Thus, if the answers given brought forth facts which were relevant for any purpose, the court did not err in declining to strike them for unresponsiveness. As to the issue of relevancy, in *State v. Humphrey*, 283 N.C. 570, 572, 196 S.E. 2d 516, 518 *cert. denied* 414 U.S. 1042 (1973), we find the following:

> The general rule in North Carolina is that the State may not offer proof of another crime independent of and distinct from the crime for which defendant is being prosecuted even though the separate offense is of the same nature as the charged crime. [Citations omitted.] However, such evidence is competent to show 'the *quo animo*, intent, design, guilty knowledge, or scienter, or to make out the *res gestae*, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions.

*See also State v. Wilborn*, 23 N.C. App. 99, 208 S.E. 2d 232 (1974). We find the challenged evidence relevant and competent to show defendant's *quo animo*, or state of mind or motive toward the victim Dahl at a time sufficiently proximate to commission of the offense with which defendant was charged to be relevant and thus to permit its consideration by the jury. It follows that the court did not err in refusing to grant defendant's motion to strike.

[2] Defendant further assigns error to the court's failure to allow defense counsel to examine the written statement of the witness Dahl, "since that statement may have contained matters that were contradictory to his in-court testimony and could have been used to impeach him." The written statement in question was given by Dahl to a special agent with the Naval Investigative Service two days subsequent to the assault upon Dahl by defendant. The trial court, in response to the request of defense counsel, viewed the statement *in camera* and determined that it did not contain any matter that might be used to impeach Dahl on cross examination. The court ordered the statement sealed and made part of the record, and defendant requests that we review the sealed statement to "determine if the statement is favorable in any respect to the Defendant and is material to the issue of the Defendant's guilt." We have examined the statement, and we find that it comports in all material particulars to the witness' testimony at trial. We find no basis in the statement for a determination that failure to disclose the statement to defense counsel resulted in the suppression of evidence which could have been favorable to the defendant. *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963). This assignment of error is overruled.

[3] Defendant finally assigns error to the admission of a statement written by the witness Robert Probeck on the day he was arrested and charged with the murder of Susan Kwiecien. The basis of his complaint is that the district attorney had failed to disclose this evidence prior to trial in response to defendant's discovery request, and that this failure constituted a violation of G.S. 15A-903(b)(1), which provides: "Upon motion of a defendant, the court must order the prosecutor: (1) to permit the defendant to inspect and copy or photograph any written or recorded statement *of a codefendant* which the State intends to offer in evidence *at their joint trial* . . . ." (Emphasis supplied.) Nothing in the record indicates that defendant and Probeck were tried in a "joint trial" or that the State ever intended so to try them. Probeck entered a plea of guilty to being an accessory after the fact to the murder of Susan Kwiecien. He is not a party defendant in this case wherein defendant was indicted for assault on Michael Dahl. Except as provided by G.S. 15A-903 relating to statements by defendants and codefendants, pre-trial disclosure of statements

made by witnesses for the State is not required by the Criminal Procedure Act. G.S. 15A-904; *State v. Abernathy*, 295 N.C. 147, 156, 244 S.E. 2d 373, 379-380 (1978); *State v. Hardy*, 293 N.C. 105, 123-125, 235 S.E. 2d 828, 839-840 (1977). Further, the exclusionary sanction imposed by the Criminal Procedure Act for failure to comply with discovery orders is permissive rather than mandatory. The Act provides that the court *"may . . . [p]rohibit the party from introducing evidence not disclosed . . . ."* G.S. 15A-910(3). (Emphasis supplied.) Finally, we note that the statement was introduced for corroborative purposes only. The essential contents of the statement were already before the jury as a result of Probeck's testimony. Consequently, even if we were to find that it was error to admit the statement, we do not believe "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . ." G.S. 15A-1443. Defendant thus has failed to sustain his burden of showing prejudice.

No error.

Judges MARTIN (Robert M.) and BECTON concur.