STATE OF NORTH CAROLINA v. COLLEY THOMPSON

No. 5

(Filed 10 April 1974)

1. Criminal Law § 29— mental capacity of defendant to stand trial — determination by trial court

Trial court did not err in denying defendant's motion for a jury trial on the question of defendant's competency to stand trial, since the preliminary question of a defendant's mental capacity to plead to a bill of indictment and to aid in the preparation and conduct of his defense is properly a question to be decided by the trial court in its discretion.

2. Criminal Law § 75— admissibility of confession

In a prosecution for first degree murder and armed robbery, the trial court did not err in admitting defendant's confession where the evidence on *voir dire* disclosed that defendant was given all warnings and cautions required by the State and Federal rules of evidence, defendant understood them and freely and voluntarily waived the right to have counsel present, and defendant then stated that he shot the victim and took money from the place of business.

3. Homicide § 25; Robbery § 5— first degree murder and armed robbery — separate crimes — instructions

In a prosecution for first degree murder and armed robbery where the charges were consolidated under G.S. 15-152 on the ground that they were separate and distinct felonies, connected in time, place, and surrounding circumstances, the trial court properly submitted both offenses to the jury, and separate conviction and sentence on each charge is upheld.

APPEAL by defendant from *Webb, S.J.,* April 2, 1973, NASH Superior Court.

In these criminal prosecutions the defendant, Colley Thompson, was charged with murder and armed robbery. The indictment in Case No. 72CR11977 charged that the defendant on November 22, 1972, with force and arms, at and in the county aforesaid, feloniously and of his malice aforethought did kill and murder Amy Claire Breedlove. In Case No. 72CR11978 the indictment charged that the defendant by the use and threatened use of a firearm, to wit, a .38 caliber pistol whereby the life of Amy Claire Breedlove was endangered and threatened, did unlawfully, forcibly, violently, and feloniously take, steal, and carry away United States currency of the value of $204.97 from the presence, person, place of business of George Breedlove contrary to the statute, etc.

On the day following the alleged offenses, the defendant was arrested in Florence County, South Carolina, under a fugitive warrant. He waived extradition and consented to be returned to Nash County, North Carolina, where warrants for his arrest were served.

Attorney Grover P. Hopkins was privately employed to represent the defendant. He filed a petition requesting the defendant be committed to Cherry Hospital for psychiatric examination. The court entered the commitment order on December 4, 1972. The report of the examination at Cherry Hospital is not in the record.

In the Nash Superior Court at the April 2, 1973 Special Session, the court, on the State's motion, ordered the cases consolidated for trial. The defendant filed a motion that the cases be moved to another county on the ground of unfavorable publicity in Nash County. After hearing, the court denied the motion to remove.

At the formal arraignment "[T]he defendant remains mute as to the substantive charges of both counts of Armed Robbery and First Degree Murder and interposes at this time a plea of Not Guilty by Reason of Insanity." The defendant moved for a bifurcated trial on the issue of insanity. By agreement, the motion was continued until after the selection of the jury. Twelve regular jurors and one alternate juror were selected and empaneled.

The court, in the absence of the jury, heard lay and expert testimony on behalf of the defendant and the State on the issue of the defendant's competency to stand trial.

The defendant's brief, which the State accepts as accurate, contained the following:

"Evidence introduced by the defendant tends to show that the defendant was treated by a psychiatrist in Florence, South Carolina in March of 1972 who placed him on medication and made a tentative diagnosis that he was paranoid and incompetent and that he lived in and believed in his delusional system and in the opinion of Dr. Camp this delusional system continued with defendant through the time of the crime. The defendant was assigned to Cherry Hospital at Goldsboro, North Carolina for examination concerning his competency and in the opinion of Dr. Eugene

Maynard, Psychiatrist at Cherry Hospital, the defendant was both competent to stand trial and did not possess any psychosis of sufficient severity to be exculpatory."

At the conclusion of the hearing, in the absence of the jury, the court concluded:

"[A]t the end of all the evidence and at the end of the voir dire hearing, the court finds as a fact that the defendant has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel to the end that any available defense may be interposed. The court concludes as a matter of law that the defendant is competent to plead to the indictments and to stand trial and the court orders the defendant to plead to the two (2) bills of indictment against him. The defendant, through counsel, excepts to all the findings of fact and conclusions of law and objects to the ruling of the court, and makes a motion for arrest of trial on the grounds that the commitment order under which the defendant was placed in Cherry Hospital was not completed by the hospital as ordered by the committing judge. Motion overruled. Exception by the defendant."

The State's evidence disclosed that the deceased, Amy Claire Breedlove, age eighteen, on November 22, 1972, was in charge of her father's self-service station, the Gas Mart, out in Nash County. In the early afternoon of November 22, 1972, the dead body of Amy Claire Breedlove was discovered in an outbuilding at the Gas Mart. Dr. Scarborough, a pathologist, performed an autopsy and found the deceased had been shot twice with a firearm. He removed one bullet from the skull which, in his opinion, had caused death. The bullet was of .38 caliber. The owner of the Gas Mart, where his daughter was at work, had purchased a pistol and left it at the Mart for protection in case of robbery. The box in which the pistol was delivered to the purchaser contained its serial number.

Witnesses had observed a Pontiac automobile bearing a South Carolina license plate in possession of a young colored male at the Mart. One witness became suspicious and took the license number of the vehicle. Nash County officers ascertained that the Pontiac bearing the South Carolina license plate was registered in the name of the defendant's mother who lived in Florence County, South Carolina.

The officers immediately went to South Carolina and interviewed the defendant. After having been given the proper warnings, he voluntarily consented to interrogation and waived the presence of an attorney. He told the officers that he had been to the Gas Mart in Nash County a number of times and had talked with the deceased; that on the previous day (November 22nd) he was at the Mart; that he saw the pistol near the cash register and slipped it in his pocket. Later he shot Miss Breedlove with the pistol, took $50 or $60 from the cash register, and left for South Carolina. He first stated that he had thrown the pistol in a pond, but when further questioned, admitted that he sold it to a boy in Florence County for $20.00. The officers found the boy and recovered the pistol. The serial number was identical with the number recorded on the box in which it was purchased. A ballistics expert found that the bullet which had caused the death of Miss Breedlove had been fired from the .38 pistol they recovered in South Carolina.

The defendant did not testify either at the hearing before the court on the issue of his competency to stand trial or at the trial on the issue of his guilt or innocence. However, the defendant and the State offered evidence before the jury substantially the same as that offered before the court on the question of mental capacity.

At the conclusion of the evidence, the court overruled the motions to dismiss and charged the jury:

"There are several verdicts you can return. As to the charge of first degree murder you can either find the defendant guilty as charged, that is, guilty of first degree murder; or you can find him guilty of second degree murder, or you can find him not guilty, or you can find him not guilty by reason of insanity.

"As to the charge of armed robbery, you can either find him guilty as charged, that is, guilty of armed robbery, or you can find him not guilty, or you can find him not guilty by reason of insanity."

The jury returned these verdicts: In Case No. 72CR11977—"Guilty of first degree murder." In Case No. 72CR11978—"Guilty of armed robbery." The verdicts were verified by a poll of the jurors at the request of defendant's counsel. The court overruled motions to set the verdicts aside, in arrest of the judgments, and for new trials.

In Case No. 72CR11977 (charging murder) the court imposed a sentence of life imprisonment. In Case No. 72CR11978 (charging armed robbery) the court imposed a prison sentence of ten years to begin at the expiration of the life sentence.

The defendant gave notice of appeal on the murder charge and moved for certiorari on the armed robbery charge. The motion for certiorari was allowed on September 10, 1973.

*Robert Morgan, Attorney General, by Raymond W. Dew, Jr., Assistant Attorney General, for the State.*

*Grover Prevatte Hopkins for defendant appellant.*

HIGGINS, Justice.

Defense counsel of record was privately employed throughout the trial in the superior court. Thereafter, upon a showing of the defendant's indigency, Mr. Hopkins was appointed by the trial court to prosecute this appeal. At all stages he has been careful and vigilant in discharging his duties as counsel in these cases.

Immediately following his employment, counsel moved for and obtained an order committing the defendant to Cherry Hospital for psychiatric examination. Thereafter at the arraignment and before plea, counsel filed an affidavit stating that Dr. Camp, a psychiatrist in Florence, South Carolina, in 1972 examined the defendant and found him to be "very psychotic," "depressed and paranoid." Upon the basis of the affidavit, the defendant first moved for a bifurcated trial on the issue of the defendant's mental capacity to stand trial, and that the issue be tried by a jury and not by the court. The motion was denied.

[1] By his first assignment of error the defendant challenges the court's denial of his motion for a jury trial on the question of defendant's competency to stand trial. It is not contended, however, that the defendant became mentally irresponsible after the homicide and before the trial. The mental capacity to plead and assist in the defense were preliminary questions to determine whether there should be a trial.

The preliminary question of a defendant's mental capacity to plead to a bill of indictment and to aid in the preparation and conduct of his defense, is properly a question to be decided by the trial judge. The rule is stated in *State v. Propst*, 274 N.C.

62, 161 S.E. 2d 560: "Ordinarily, it is for the court, in its discretion, to determine whether the circumstances brought to its attention are sufficient to call for a formal inquiry to determine whether defendant has sufficient mental capacity to plead to the indictment and conduct a rational defense. . . . Whether defendant is able to plead to the indictment and conduct a rational defense should be determined prior to the trial of defendant for the crime charged in the indictment. . . . '(T)he defendant's capacity to enter upon a trial, should be determined before he is put upon the trial; . . . ' " See also *State v. Moore,* 245 N.C. 158, 95 S.E. 2d 548; *State v. Sullivan,* 229 N.C. 251, 49 S.E. 2d 458; *State v. Khoury,* 149 N.C. 454, 62 S.E. 638.

In this case, Judge Webb after a voir dire hearing in the absence of the jury, upon the basis of lay and expert testimony, found the defendant was competent to stand trial. The facts found and the conclusion drawn from them are supported by the evidence before the court. The defendant's assignment of error is not sustained. *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516; *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802.

[2]  The defendant has excepted to and assigned as error the court's admission of his confession before the jury. When the State indicated its intention to offer the defendant's confession in evidence, the court excused the jury and conducted a thorough voir dire. Sheriff Womble of Nash County and Mr. W. F. Dowdy, Special Agent of the State Bureau of Investigation, testified the defendant was given all warnings and cautions required by the State and Federal rules of evidence; that the defendant understood them and freely and voluntarily waived the right to have counsel present. He told the officers that he had shot Miss Breedlove with a pistol taken from the place of business; and that he took $50 or $60 from the cash register and left for South Carolina.

One of the store's customers, Mr. Deans, had seen the defendant at the store on other occasions, had been suspicious, and had noted the South Carolina license number of the Pontiac automobile he was driving. This license number led to the defendant's almost immediate arrest in South Carolina.

When confronted by Deans' story, defendant confessed, first stating he threw the pistol in a pond, later saying he sold it to a boy in South Carolina for $20.00. The officers recovered the pistol. The serial number on the box in which it came was the

State v. Thompson

same as the number on the pistol. The ballistics test disclosed that the bullet which caused the death of Miss Breedlove had been fired from that pistol.

The defendant did not offer evidence on the voir dire which the court held to determine the admissibility of the confession. The defendant was in lawful custody under a fugitive warrant. He waived extradition and consented to accompany the North Carolina officers to Nash County. The admissions dovetailed with the facts independently developed by the investigating officers. The evidence on the voir dire supported the findings that his confession was free and voluntary. The findings, having support in the evidence, are conclusive on appeal. *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652; *State v. Hill*, 276 N.C. 1, 170 S.E. 2d 885; *State v. Vickers*, 274 N.C. 311; 163 S.E. 2d 481; *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344; *State v. Outing*, 255 N.C. 468, 121 S.E. 2d 847.

The defendant's counsel has argued before this Court other objections not herein discussed. They have been considered with a care commensurate with the seriousness and gravity of the offenses charged. The determination that the defendant is competent to stand trial, and his detailed confession, form solid support for the jury's finding of guilt. Nothing in the evidence suggests innocence.

[3] Judge Webb instructed the jury that in order to return a verdict of guilty of murder in the first degree, the jury was required to find from the evidence beyond a reasonable doubt that the defendant acted with malice and after premeditation and deliberation in killing Amy Claire Breedlove. At no time did the court permit the jury to consider or rely on the felony murder rule as a basis for finding the defendant guilty of murder in the first degree.

Under the court's instructions, the jury was not permitted to consider armed robbery in connection with the charge of murder. In the court's charge, murder and robbery were treated as entirely separate and independent crimes. The charges were consolidated for trial under G.S. 15-152 on the ground that they were separate and distinct felonies, connected in time, place, and surrounding circumstances. *State v. Anderson*, 281 N.C. 261, 188 S.E. 2d 336; *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561; *State v. White*, 256 N.C. 244, 123 S.E. 2d 483. The decision that both charges may be upheld in this case is not inconsistent

with our holdings in *State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169; *State v. Lock,* 284 N.C. 182, 200 S.E. 2d 49; *State v. Carroll & Stewart,* 282 N.C. 326, 193 S.E. 2d 85; *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326. In the cited cases, the armed robbery charges were merged into and made a part of the first degree murder charges because of the instruction to the jury that if the defendant killed the deceased in the perpetration or in the attempt to perpetrate the robbery, the finding would justify a verdict of guilty of murder in the first degree without a finding or proof of malice or of premeditation and deliberation.

The court charged that a verdict of guilty of murder in the first degree could be rendered only upon a finding from the evidence beyond a reasonable doubt that the killing was done with malice and after premeditation and deliberation. The felony murder rule was not submitted to the jury in this case.

A careful review of the record fails to disclose any error of law or legal inference committed by the trial court. The verdicts and judgments will be upheld.

No error.