STATE OF NORTH CAROLINA v. MICKEY BELL

No. 27

(Filed 6 May 1975)

1. Homicide § 21— premeditation and deliberation — sufficiency of evidence

   The State's evidence of premeditation and deliberation was sufficient for submission to the jury of an issue of defendant's guilt of first degree murder where it tended to show that defendant and deceased had an argument, defendant then went home, armed himself with a pistol and brought on a second encounter with deceased at a store,

State v. Bell

and when deceased attempted to flee, defendant ran him down and shot him five times, once from the back, causing death.

2. **Constitutional Law § 29; Jury § 7; Criminal Law § 135— jury selection — right to question as to death penalty views**

The trial court in a first degree murder case erred in refusing to allow defense counsel to question prospective jurors regarding their beliefs and attitudes about capital punishment.

APPEAL by defendant from *Bailey, J.,* at the October 16, 1973 Session of ROBESON Superior Court.

Defendant was tried upon an indictment which duly charged him with murder in the first degree of one George Bell, Jr., found guilty by the jury as charged and sentenced to death.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Ann Reed for the State.*

*L. J. Britt, Jr., and Bruce W. Huggins for defendant appellant.*

EXUM, Justice.

Defendant's first assignment of error is the denial of his motion for nonsuit as to the charge of murder in the first degree. He contends there was insufficient evidence of premeditation and deliberation to be submitted to the jury. There is no merit to this contention.

The State's evidence is, in summary, to this effect: On August 11, 1973, shortly after 7:00 p.m. the deceased George Bell, Jr., was riding in a car being operated by one Leslie Chavis. As the car proceeded toward the Piney Grove School in Robeson County defendant, who was walking on the side of the road, said something to the occupants and Chavis brought the car to a stop. Defendant approached the car and began talking to George Bell. They moved to the rear of the car where they argued for about five minutes. During the course of the argument George Bell slapped defendant. After the argument George Bell re-entered the car and defendant continued to walk down the road. Chavis took George Bell to the home of Cleveland Hunt. At approximately 8:30 p.m. Hunt and George Bell walked about one-fourth of a mile to Horace Stanley's store. From there George Bell was taken to another store at Piney Grove in a truck operated by Freddie Jones. When George Bell got out of Jones' truck it was dark but lights from the store illuminated

the immediately surrounding area. Defendant, who was at or near the store, fired a pistol in George Bell's direction whereupon George Bell ran down the road into the darkness. Defendant ran after him. After the two passed into the darkness and out of view several more shots were heard. Shortly thereafter George Bell was found dead in the middle of the road. No weapons had been observed on George Bell at any time. A trail of blood was found leading from his body back down the road toward the store—a distance of some twelve to fifteen hundred feet. Post-mortem examination revealed the cause of death to be loss of blood caused by gunshot wounds in the deceased's chest. Two bullet entry wounds were found on the left side and one on on the right side of his chest. Two wounds, possibly caused by the same bullet, were found on his right arm. Still another bullet wound was found on his right buttock.

After being properly advised of his rights defendant made a voluntary statement to investigating officers, admitted into evidence, to this effect: When he and George Bell first argued George Bell threatened to cut defendant with a razor blade if he ever saw him again. Defendant then went home, got a .32 caliber Smith and Wesson revolver and went to the store where he and George Bell had their second encounter of the evening. Defendant called George Bell to come over where he was. As George Bell came across the road it appeared to defendant that he was reaching in his pocket for something. Defendant told him not to do that and shot at the ground in front of him. George Bell then started running down the road; defendant ran after and caught up with him. They argued briefly and George Bell started "coming on him." Defendant backed off but George Bell kept coming. Defendant shot George Bell three times and ran.

Defendant offered no evidence.

[1] From the evidence offered a jury could infer that after the initial argument between defendant and George Bell defendant went home, armed himself with a deadly weapon, and, being armed, brought on the second encounter. When George Bell attempted to flee, defendant ran him down and shot him five times, once from the back, causing death. The evidence is clearly sufficient to be submitted to a jury on the question of premeditation and deliberation. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974), and cases cited; *State v. Johnson*, 278 N.C. 252, 179 S.E. 2d 429 (1971); *State v. Downey*, 253 N.C. 348, 117 S.E. 2d 39 (1960).

Upon motion of the Attorney General this Court allowed the record in this case as originally filed to be amended to include the following stipulations made by defendant and the State:

> "I. The defendant was tried and convicted of first degree murder before James H. Pou Bailey, October 16, 1973, Session, Robeson County Superior Court.

> "II. The record in the Bell case does not disclose that counsel for the defendant in any manner brought to the court's attention his desire that the jury be instructed as to the punishment for First Degree Murder.

> "III. James Edward Britt was tried and convicted of First Degree Murder before James H. Pou Bailey, August 27, 1973 Session, Robeson Superior Court.

> "IV. The jury in the BRITT case returned with a verdict of 'First Degree Murder, with mercy' and the court did not instruct the jury concerning the punishment for First Degree Murder.

> "V. Counsel for the defendant in the case on appeal was aware of the ruling of the court in the BRITT case.

> "VI. That because of the ruling laid down in the BRITT case, and as again verified by Judge Bailey to the Solicitor and Defense Attorney, *Judge Bailey ruled that defense attorney was not to be allowed to question prospective jurors as to their belief in capital punishment and as to their knowledge and understanding that a conviction of First Degree Murder would carry with it a punishment of death.*

> "VII. Because he was aware of the court's previous ruling, counsel for the defendant made no motion for instruction to the jury concerning the punishment for First Degree Murder, and *no such instruction was in fact given to the jury.*

> "VIII. Otherwise, in light of apparent uncertainty on the part of the jury in the case on appeal the counsel for the defendant would have requested an instruction to the jury concerning the punishment for First Degree Murder." (Emphasis supplied.)

Defendant contends that the actions of Judge Bailey emphasized above entitle him to a new trial by reason of our decision in *State v. Britt, supra.* With this we must agree.

In *Britt,* the case referred to in the stipulations, Judge Bailey refused to allow a defendant or the State to question prospective jurors concerning their beliefs and attitudes about capital punishment. Neither did he instruct the jury that a verdict of guilty of first degree murder would require the court to sentence the defendant to death. The jury in *Britt* appeared, however, to be confused with regard to the effect of its verdict. The verdict as returned by it was, "First-degree murder, with mercy." Judge Bailey responded that this was not a permissible verdict and that he would "not accept the recommendation of the jury as to punishment in the matter, *for punishment is entirely for the court."* 285 N.C. at 268, 204 S.E. 2d at 826. After recognizing earlier decisions holding that normally the jury should not be informed regarding punishment we said in *Britt,* 285 N.C. at 272, 204 S.E. 2d at 828:

> "Nevertheless, we here reaffirm and adhere to the proposition that ordinarily it is not the duty of the trial judge in criminal actions to instruct the jury as to punishment. However, we recognize that in a capital case, there may be a 'compelling reason which makes disclosure as to punishment necessary in order "to keep the trial on an even keel" and to insure complete fairness to all parties. . . . ' *State v. Rhodes, supra.* Thus in a capital case if the jury appears to be confused or uncertain, the trial judge should act to alleviate such uncertainty or confusion. Specifically, if the trial judge observes that the jury is confused or uncertain as to whether one of its permissive verdicts would result in a mandatory death sentence, in our opinion, sufficient compelling reason exists to justify his informing the jury of the consequence of their possible verdicts."

**[2]** In the case now before us no such confusion on the part of the jury is evident. We said, however, further and unequivocally in *Britt,* 285 N.C. at 267, 204 S.E. 2d at 825:

> "It was error for the trial judge to refuse to allow counsel for defendant and the Solicitor for the State to inquire into the moral or religious scruples, beliefs

and attitudes of the prospective jurors concerning capital punishment."

Consequently, even if an instruction to the jury on the effect, punishmentwise, of its verdict was not required under the strict holding of *Britt* on this point, refusal to allow inquiry of prospective jurors regarding their beliefs and attitudes about capital punishment constitutes prejudicial error entitling defendant to a new trial. While such inquiry may not produce challenges for cause by the defendant, questions must be allowed of prospective jurors which might lead to challenges either peremptory or for cause so that both the State and the defendant can "eliminate extremes of partiality . . . . " *State v. Honeycutt*, 285 N.C. 174, 179, 203 S.E. 2d. 844, 848 (1974). See also *State v. Carey*, 285 N.C. 509, 206 S.E. 2d 222 (1974); *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974); and *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974).

It should be noted that the Legislature has enacted, effective as of July 1, 1974, Section 12 of Chapter 1286 of the 1973 Session Laws, codified as General Statutes 15-176.3 through 15-176.5, which in capital cases (1) permits advising prospective jurors of the consequences of a verdict of guilty, (2) requires upon request an instruction to the jury that the death penalty will be imposed upon the rendering of such a verdict, and (3) permits argument to the jury upon the consequences of their verdict.

Defendant's remaining assignment of error is directed to Judge Bailey's refusal to permit him to recross-examine one of the State's witnesses on a matter brought out on redirect examination by the State. Inasmuch as this incident is unlikely to occur at the next trial it is not necessary to consider it here.

For the reasons stated, there must be a

New trial.