STATE OF NORTH CAROLINA v. JOHNNY H. BOYD

No. 7

(Filed 6 May 1975)

1. Jury § 6— examination as to death penalty views

The trial court in a first degree murder and first degree burglary case did not err in permitting the State to question prospective jurors about their beliefs on capital punishment.

2. Jury § 7— death penalty views — challenge of jurors for cause proper

The trial court did not err in allowing the State's challenges for cause of seven prospective jurors who stated that because of their personal opposition to capital punishment they could not under any circumstances return a verdict the consequences of which would be the imposition of the death sentence.

State v. Boyd

3. **Jury § 7— challenge for cause — disallowance — preservation of exception**

    By exhausting his peremptory challenges and thereafter asserting his right to challenge peremptorily an additional juror defendant preserved his exception to the earlier denial of his challenge for cause of a juror.

4. **Jury § 7— challenge for cause — disallowance proper**

    The trial court did not err in denying defendant's challenge for cause of a juror who stated positively that she believed in capital punishment if the crime "was proved by the evidence," and she would have to be satisfied of his guilt beyond a reasonable doubt.

5. **Jury § 7— peremptory challenges — number in capital case**

    G.S. 9-21(a) and (b) allot peremptory challenges to both the State and the defendant on the basis of the number of defendants and not the number of charges against any one defendant; therefore, the trial court properly allowed the defendant who was charged with first degree murder and first degree burglary fourteen rather than twenty-eight peremptory challenges.

6. **Homicide § 12— felony-murder — prosecution for burglary and murder — no election required**

    The trial court did not err in refusing to require the State to elect prior to trial whether it was proceeding on the felony-murder rule or on both indictments, one for murder and one for burglary, without recourse to the felony-murder rule.

7. **Homicide § 20— color photograph of deceased — admissibility to illustrate coroner's testimony**

    The trial court did not err in allowing into evidence a color photograph of the deceased's body for the purpose of illustrating the coroner's testimony though there was available a black and white photograph depicting essentially the same scene.

8. **Criminal Law § 57— revolver seized at defendant's arrest — necessity for showing chain of custody**

    Where officers seized a .32 caliber revolver in plain view at the time of defendant's arrest and recorded the serial number of the revolver, and a firearms expert identified the pistol at trial by its serial number and make, it was unnecessary for the State to show a chain of custody of the weapon in order to put it and the ballistics testimony about it into evidence.

9. **Burglary and Unlawful Breakings § 5— first degree burglary — intent to steal and intent to murder — necessity for proving both**

    Burglary indictment charging that defendant "did break and enter, with intent, the goods and chattels . . . to steal, take and carry away *and* with intent to commit the crime of murder . . . " did not require the State to prove both the intent to steal and the intent to murder in order to prove defendant's guilt of burglary.

10. **Burglary and Unlawful Breakings § 6; Criminal Law §§ 135, 138— first degree burglary — instruction as to death penalty**

    The trial court did not err in instructing the jury that as a consequence of a verdict of guilty of burglary in the first degree the defendant would be sentenced to death.

11. **Constitutional Law § 36; Burglary and Unlawful Breakings § 8— first degree burglary — constitutionality of death sentence**

    Death penalty imposed in a first degree burglary case is constitutional.

    Chief Justice SHARP and Justices COPELAND and EXUM dissent as to death sentence.

DEFENDANT appeals from the judgment of *Grist, J.,* July, 1974 Special Criminal Session, LINCOLN Superior Court.

Defendant, Johnny H. Boyd, was arrested on January 26, 1974, and charged in separate warrants with first degree murder of Augusta Pearl Henderson and first degree burglary of her dwelling, both alleged to have occurred on January 22, 1974. True bills of indictment were returned in both cases. On the State's motion and over defendant's objection both bills of indictment were consolidated for trial.

The State's evidence tended to show that Augusta Pearl Henderson, an 84-year-old retired school teacher who lived alone, was killed during the course of a burglary of her home in the early morning hours of January 22, 1974. Her home was discovered ransacked and she was found in her bed on the afternoon of January 22, dead from multiple bullet wounds. In a signed statement made to police officers after his arrest, introduced in evidence against him, defendant admitted his participation in the burglary and implicated two other persons. He denied any involvement in the killing, stating that this had occurred while he was searching another part of the house for money and valuables.

Various witnesses testified about two weapons used in the shooting. Paul Brown stated that defendant had borrowed his .22 caliber rifle the day before the burglary and returned it the next day after the crime had taken place. Coleman Kendrick identified a .32 caliber revolver found in defendant's possession when he was arrested as one belonging to Augusta Pearl Henderson. Expert testimony by B. J. Sloan, a firearms examiner, revealed that these were the two weapons with which Miss Henderson was shot and killed. Sloan testified that through the use

of a comparison microscope he examined at .32 caliber bullet taken from the deceased's body and another .32 caliber bullet that he test-fired from the revolver. Marks on the bullets made by the inside of the barrel matched, indicating that the two ·bullets were fired by the same weapon. Sloan also examined a spent .22 caliber cartridge casing found in Miss Henderson's bedroom with one test-fired from the rifle. The markings on the two cartridges made by the firing pin and the extractor indicated that the two cartridges had been fired from the same weapon. All other pertinent facts will be discussed in the body of the opinion.

Defendant declined to present evidence.

Judge Grist submitted the case to the jury on. charges of first degree burglary and second degree murder. The jury returned a verdict of guilty of first degree burglary but announced that it was hopelessly deadlocked on the second degree murder charge. Judge Grist declared a mistrial on the murder charge and sentenced defendant to death on the burglary conviction.

*Attorney General Rufus L. Edmisten and Assistant Attorney General James E. Magner, Jr., for the State.*

*, Robert C. Powell for defendant appellant.*

EXUM, Justice.

I

[1]   Defendant's first four assignments of error relate to the selection of the jury. He contends that the State should not have been permitted to question prospective jurors about their beliefs on capital punishment. The argument is without merit. We continue to believe as we said in *State v. Crowder*, 285 N.C. 42, 46, 203 S.E. 2d 38, 41 (1974) :

> "In order to insure a fair trial before an unbiased jury, it is entirely proper in a capital case for both the State and the defendant to make appropriate inquiry concerning a prospective juror's moral or religious scruples, beliefs, and attitudes toward capital punishment."

*See also* G.S. 15-176.3.

[2]   Defendant next says it was error to allow the State's challenges for cause of seven prospective jurors who stated that because of their personal opposition to capital punishment ·they

State v. Boyd

could not under any circumstances return a verdict the consequences of which would be the imposition of the death sentence. Defendant argues that a jury deprived of such persons is "conviction-prone" and biased in favor of the prosecution on the question of guilt. This argument has been consistently rejected by a majority of the United States Supreme Court, *Bumper v. North Carolina,* 391 U.S. 543, 20 L.Ed. 2d 797, 88 S.Ct. 1788 (1968); *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), and unanimously by this Court. *State v. Avery,* 286 N.C. 459, 212 S.E. 2d 142 (1975) and cases cited; *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975) and cases cited; *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568 (1968), cert. denied, 393 U.S. 1042, 21 L.Ed. 2d 590, 89 S.Ct. 669 (1969). We adhere to our former rulings on this point.

[3, 4] Defendant contends that his challenge for cause of Juror Graeber should have been allowed. What transpired as revealed by the record follows (questions unless indicated otherwise are by defendant's counsel):

"Q: Mrs. Graeber, do you feel like Mr. Boyd must have done something to be here, ma'am? Honestly?

"A: Well, I don't think they just go out and arrest someone without cause or reason.

"Q: So you think he must have done something in order to be here, committed some crime?

"A: I have a few mixed emotions about it.

"Q: You replied to the Solicitor's question about capital punishment—you replied that you had no scruples whatsoever—I thought by your answer that you might be prejudiced against him, and if you are, we'd like to know, of course.

"A: Well, I just feel very strongly for capital punishment, if the person, if it was proved of rape, murder, burglary.

"Q: And that would be without consideration of the circumstances of any particular case?

"A: I said if it was proved, by the evidence.

"Q: Just across the board.

"A: On rape, burglary, murder.

"Q: Let's go back to your feelings about Mr. Boyd and the fact that you say the police don't arrest somebody without reason. Do you feel that as he sits here, in your mind, he is innocent and will remain so until such time as the State proves beyond a reasonable doubt all the elements of the crimes charged against him?

"A: Yes, because he said so, and I usually take someone at their word until—

"Q: So, then, you can detach yourself to the point that you don't feel like he has done anything at the present time, is that right?

"A: I suppose so.

"Q: I don't mean to belabor it, but—

"A: I'm sorry, but I do have mixed emotions about it— I'm very sorry.

"Q: I'd like to challenge her for cause if it please the Court.

"COURT: Are you of the opinion that the police only arrest people who are guilty of something?

"A: No, sir, no, sir.

"COURT: And do you feel that just because a person is accused of a crime, they must be guilty of something or they wouldn't be here? Now, think about that.

"A: I have tried to think about it.

"COURT: Ma'am?

"A: I have tried to think about it, but I couldn't say the man is guilty until the circumstances proves it one hundred percent.

"COURT: That's what it's all about. As you see the defendant, now, the fact that he's been indicted, there's no evidence that he has committed any offense, is it?

"A: That's right.

State v. Boyd

"COURT: And before—so far as you're concerned, before you'll convict him of any crime, no matter how significant, you'd have to be satisfied beyond a reasonable doubt of all of the evidence necessary to convict him of that crime. Would you, or wouldn't you?

"A: I would have to be, yes.

"COURT: You want to question her any further?

"Q: Yes, sir. Now, Mrs. Graeber, you have heard, also, what has been said about the possible evidence arising on the offense of voluntary intoxication. Have my statements as to that prejudiced you in any way against the defendant?

"A: No, sir.

"Q: Are you prejudiced against the use of alcohol and narcotics to the extent that you could not follow the Court's charge, if the defense arises?

"A: No, sir.

"Q: You feel that after talking with the Judge and with me, that Mr. Boyd is innocent as he sits here, is that right, at the present time?

"A: Yes, sir.

"Q: You're sure of that?

"A: Yes, sir.

"Q: You're sort of smiling.

"COURT: Are you real sure, Mrs. Graeber?

"A: Yes, sir.

"COURT: If you serve on this jury, it will be one of the most important things that you do in your lifetime. I want you to be sure about your answer, and there can't be much equivocation one way or the other.

"A: Right.

"COURT: Do you feel that the defendant, as he sits beside his lawyer, that he is innocent and it's the question for

the State to prove him guilty beyond a reasonable doubt before you will find him guilty of any offense?

"A: Yes, sir.

"Defense counsel then questioned Mrs. Wagoner and Mrs. Grier.

· "The Court then stated: Let the record show that you made a challenge for cause which was denied and Mrs. Graeber is excused peremptorily, making your fourteenth challenge. What do you say about the others? EXCEPTION No. 45."

Later during the jury selection defendant challenged Juror Ferris for cause and Juror Blackburn peremptorily. Both challenges were denied. By exhausting his peremptory challenges and thereafter asserting "his right to challenge peremptorily an additional juror" defendant· preserved his exception to the denial of his challenge for cause of Juror Graeber. *State v. Allred,* 275 N.C. 554, 563, 169 S.E. 2d 833, 838 (1969). Defendant urges that Juror Graeber was biased against him merely because he had been arrested and charged, and that she expressed some difficulty in applying the "presumption of innocence" principle. While some of Mrs. Graeber's answers were equivocal, she stated positively: (1) that she believed in capital punishment if the crime "was proved by the evidence"; (2) "I couldn't say the man is guilty until the circumstances proves [sic] it one hundred percent"; and (3) that she would have to be satisfied of his guilt beyond a reasonable doubt. "Each party to a trial is entitled to a fair and unbiased jury. Each may challenge for cause a juror who is prejudiced against him. A party's right is not to select a juror prejudiced in his favor but to reject one prejudiced against him." *State v. Peele, supra,* 274 N.C. at 113, 161 S.E. 2d at 573 (1968). Here there is no showing of prejudice against defendant on the part of Juror Graeber. At most her answers reveal a fleeting quibble regarding the effect of defendant's having been arrested and formally charged. Judge Grist conscientiously pursued this point and her responses both to him and to further questions by defendant's counsel plainly sustain the implied finding by Judge Grist that she would require the State to prove defendant's guilt beyond a reasonable doubt. In *State v. Allred, supra,* we found reversible error in the denial of defendant's challenge for cause of a juror where "there was no basis for a finding, if such had been made, that

State v. Boyd

[the juror] was acceptable as a disinterested and impartial juror." 275 N.C. at 563, 169 S.E. 2d at 838. Here, to the contrary, there is ample basis for such a finding. *See State v. Watson,* 281 N.C. 221, 227-28, 188 S.E. 2d 289, 293 (1972) ; G.S. 9-14.

**[5]** Defendant's argument that he should have been allowed fourteen peremptory challenges for each capital charge against him, giving him twenty-eight such challenges in all is not persuasive and is contrary to the plain language of G.S. 9-21(a) : "In all capital cases each defendant may challenge peremptorily without cause 14 jurors and no more." General Statute 9-21(b) provides, furthermore, that "[i]n all capital cases the State may challenge peremptorily without cause nine. jurors for each defendant and no more." It is clear that these statutes allot peremptory challenges to both the State and the defendant on the basis of the number of defendants and not the number of charges against any one defendant. The murder and burglary bills of indictment were properly consolidated, G.S. 15-152; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970) ; *State v. Morrow,* 262 N.C. 592, 138 S.E. 2d 245 (1964), and once consolidated they became one case for the purpose of trial. The result for trial purposes is the same as if defendant had been tried simultaneously on several counts in one bill of indictment. *State v. Alridge,* 206 N.C. 850, 175 S.E. 191 (1934).

In *Alridge* three separate non-capital bills of indictment were returned against each of four defendants. The cases were consolidated without objection for trial. The defendants moved to be allowed 12 peremptory challenges apiece, or four challenges per bill of indictment. The governing statute as quoted in the opinion provided that in non-capital cases "every person on trial shall have the right of challenging peremptorily, and without showing cause, four jurors and no more." The trial court denied the motion, and this Court found no error. We held that each defendant was entitled to only four peremptory challenges, saying:

"The theory of the law is that when two or more indictments for the same offense are consolidated, they are to be treated as separate counts of the same bill. *S. v. Stephens,* 170 N.C., 745, 87 S.E., 131; *S. v. Lewis,* 185 N.C., 640, 116 S.E., 259; *S. v. Malpass,* 189 N.C., 349, 127 S.E., 248;

*S. v. Beal,* 199 N.C., 278, 154 S.E., 604. Consequently, if there is but one bill containing several counts, it would seem manifest that a defendant is not entitled to four peremptory challenges on separate counts in a bill, but that he should be allowed four challenges at the trial on the consolidated bill." 206 N.C. at 852, 175 S.E. at 192.

That defendant here objected to the consolidation of the cases does not distinguish this case in principle from *Alridge.* That objection raises only the question of whether the cases were properly consolidated. That these are capital cases again makes no material difference. See *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) where we held it to be error, albeit harmless, for the trial judge to allow the State twenty-two and the defendant thirty-four peremptory challenges when two capital cases and one non-capital case were consolidated for trial.

## II

[6]   The denial of defendant's motion before trial that the State be required to elect whether it was proceeding "on the felony-murder rule or . . . on both indictments without recourse to the felony-murder rule" constitutes defendant's fifth assignment of error. While the murder indictment itself does not appear in the record it is set out verbatim in Judge Grist's instructions to the jury as alleging that the defendant did kill Augusta Pearl Henderson "with premeditation and deliberation, and of his malice aforethought," the form prescribed by G.S. 15-144. This indictment was sufficient to support a verdict of guilty of first degree murder on the theory that the killing was with malice and after premeditation and deliberation or in the perpetration of some other felony within the meaning of G.S. 14-17. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972) ; G.S. 15-144 and annot. thereunder. Since the murder and burglary charges were consolidated for trial the State could proceed on each indictment separately without relying on the felony-murder rule. *State v. Thompson,* 285 N.C. 181, 203 S.E. 2d 781 (1974). Under this procedure had the defendant been convicted of both first degree murder and first degree burglary he could have been sentenced on both convictions. *Id.* at 187-88, 203 S.E. 2d at 785. If the first degree murder case had been submitted to the jury on the theory that the killing took place during the perpetration of the burglary and a conviction obtained thereby, the burglary charge would have been "merged into and made

a part of the first degree murder [charge]," *Id.* at 188, 203 S.E. 2d at 785, and "no additional punishment [could] be imposed for [the burglary] as an independent criminal offense." *State v. Williams,* 284 N.C. 67, 75, 199 S.E. 2d 409, 414 (1973). Judge Grist, after dismissing the first degree murder charge, submitted this case to the jury on each indictment separately without recourse to the felony-murder rule. We do not believe that the State was required to elect upon which theory it would proceed prior to the introduction of evidence. The evidence, theoretically, might have supported both, either, or neither theories. *See State v. Summrell,* 282 N.C. 157, 192 S.E. 2d 569 (1972); *State v. Smith,* 201 N.C. 494, 160 S.E. 577 (1931). It clearly supported application of the felony-murder rule. *See State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972); *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1972), cert. denied, 409 U.S. 888, 34 L.Ed. 2d 145, 93 S.Ct. 194 (1972); *State v. Fox, supra.* In not relying on the felony-murder rule, Judge Grist was probably trying to avoid application of the merger doctrine. In any event the lack of a conviction on the murder charge makes this question moot.

### III

[7] Objections to the introduction of certain evidence form the bases for assignments of error six, seven and eight. Defendant contends that the admission into evidence of a color photograph of the deceased showing the wounds which caused her death when there was a black and white photograph available depicting essentially the same scene was error. We cannot agree. Coroner McLean testified on *voir dire* that although the black and white photo was "better" and "larger" the color photograph did enable one to better distinguish blood stains from bullet holes on the deceased's bedcovers. The color photograph was used only to illustrate the testimony of the coroner. Part of his testimony dealt with comparing the bullet wounds in Miss Henderson's body with bullet holes he found in the bedcovers. "The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence, when properly authenticated as a correct portrayal of conditions observed by and related by the witness who uses the photograph to illustrate his testimony." *State v. Atkinson,* 275 N.C. 288, 311, 167 S.E. 2d 241, 255 (1969); *accord, State v. Doss,* 279 N.C. 413,

183 S.E. 2d 671 (1971) ; *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955) ; *State v. Perry,* 212 N.C. 533, 193 S.E. 727 (1937).

Defendant objects to the admission in evidence of a .32 caliber "Spain" revolver (State's Exhibit No. 6) and expert testimony concerning ballistic tests performed with that weapon. The objection to the expert testimony is based on defendant's objection to the admission of the revolver. Defendant concedes that the expert testimony is admissible if the revolver was properly identified as the one found in his possession. The sole basis for defendant's objection to the admission of the revolver is his contention that a chain of custody between its seizure and its introduction into evidence was not established. Six witnesses testified to establish the chain of custody. Defendant concedes in his brief that "[e]ach of these witnesses other than Tony Wilson was able to indicate a positive identification of this pistol." Wilson, an identification specialist for the Gaston County Rural Police, testified on direct examination:

> "At the time I was an ID officer, I received certain evidence involving this case from Mr. Davis and others. I can identify State's Exhibit No. 6. I got that from Detective Davis. I received that pistol from Detective Davis on the 26th approximately 10:30 in the morning. . . .

> "I can identify State's Exhibit No. 7, a .22 rifle. I received that from Captain Homesley on the 26th. Along with the rifle and the pistol and other evidence, they were all taken to the Charlotte Crime Lab and at that time turned over to Mr. Sloan.

> "That is Mr. Sloan. I turned that over on February 1. During the time I had it, it was locked up in the evidence room, Gaston Rural Police Evidence Room. I was the only one that had a key to the evidence room. I'm the evidence officer. It had not been tampered with at all.

> "I took State's Exhibits 6, the pistol, 7, the rifle, 3, the box, 4, another box, 5 another box, that has been previously identified as to what is in them, and 8, the vial, over to this gentleman."

On cross-examination Wilson stated:

> "I received this gun from Mr. Davis, also. There is no other particular way I know it is the gun I received from

State v. Boyd

Mr. Davis other than it looks like the gun, the serial number on the bottom of it. I checked the number and it's recorded in the large folder. I haven't cross checked that since I've been here today. *I just assume that's the one he gave to me. It looks like it.*" (Emphasis supplied.)

Defendant seizes upon the emphasized portion of Wilson's testimony on cross-examination to support his proposition that Wilson was not able to make a positive identification of State's Exhibit No. 6 as being the weapon he received from Davis.

[8]   The argument fails for two reasons. Defendant was found by arresting law enforcement officers—Thomas Reynolds, Jackie Barrett and Thomas McDevitt—underneath a single bed in an upstairs apartment. As he got out from under the bed a .32 caliber revolver was found on the floor underneath the head of the bed. Barrett examined the revolver at the scene and there wrote down the serial number. He identified State's Exhibit No. 6 as having "the same number that I have here where I wrote it down that day. . . . I made that notation on the same day I got the pistol. That pistol has the same serial number that I have here which I got off the butt of the gun. . . . [T]his type weapon is the first one I ever seen like it. I have not seen any others like it since then." Witness B. J. Sloan, a firearms expert, also identified State's Exhibit No. 6 by its serial number and make as the .32 caliber revolver upon which he made ballistic comparisons. With this kind of positive identification of State's Exhibit No. 6 by serial number and make it was unnecessary to show a chain of custody of the weapon in order to put it and the ballistics testimony about it into evidence. *See State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975) ; *State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972) ; *State v. Fox, supra; State v. Bass,* 249 N.C. 209, 105 S.E. 2d 645 (1958) ; *State v. Macklin,* 210 N.C. 496, 187 S.E. 785 (1936) ; McCormick, Evidence, § 212 at 527 (2d ed. 1972) ; 1 North Carolina Evidence 356, n. 11 (Brandis Revision 1973).

Even if the chain of custody type identification were required, Wilson's statements on cross-examination that he "assumed" the pistol was the one given him by Davis and that "it looks like it" would not vitiate his identificaton of the pistol so as to break the chain. See *State v. Simmons, supra,* and cases cited therein. These statements go at most to the weight to be accorded his testimony by the jury.

## IV

Although defendant's ninth assignment of error is that his confession was improperly allowed in evidence, his brief concedes that he "is unable to make any persuasive argument concerning error on the part of the trial court in this respect." Since this is a capital case we have, at defendant's request, scrutinized the *voir dire* testimony relating to the admissibility of the confession. This portion of the trial covers 60 pages of the record. Judge Grist made extensive findings of fact, supported by the evidence, which in turn support his conclusions that the confession was made freely and voluntarily after the defendant had been duly advised of his constitutional rights, which he knowingly and understandingly waived before making his statement. There was no error in admitting the confession.

## V

[9] The burglary indictment reads in part that defendant "did break and enter, with intent, the goods and chattels . . . to steal, take and carry away *and* with intent to commit the crime of Murder . . . . " (Emphasis added.) Defendant contends: (1) that for conviction under this indictment the State was required to prove both the intent to steal *and* the intent to murder; (2) there was no evidence that defendant intended to murder when he broke and entered the house; and (3) his motions for nonsuit should have been allowed. His tenth assignment of error is directed to Judge Grist's denial of these motions. Defendant has abandoned assignment of error eleven. Assignments of error twelve and thirteen are that Judge Grist should have instructed the jury to find both intents alleged before returning a guilty verdict on the burglary indictment. Guided by the authorities that follow we overrule assignments of error ten, twelve and thirteen.

*State v. Christmas*, 101 N.C. 749, 8 S.E. 361 (1888), is instructive on these questions. There defendant was indicted for feloniously entering the dwelling house of T. B. Lyman with intent to steal "the goods, chattels and money of . . . T. B. Lyman, and also the goods, chattels and money of Anna M. Lyman, in the said dwelling-house then and there being." The evidence tended to show that only the property of Anna M. Lyman was stolen. The trial court instructed the jury that they could convict the defendant if they found beyond a reasonable doubt that he entered the house with intent to steal property

---

State v. Boyd

---

of either Mr. or Mrs. Lyman. A motion in arrest of judgment on the ground that the indictment charged two distinct offenses was denied by this Court and we found no error in the trial.

Analogous rulings have been made in cases arising under G.S. 14-54 which make it a felony if one "breaks *or* enters any building with intent to commit any felony or larceny therein." (Emphasis supplied.) It has long been the law in this State in prosecutions under this statute and its similar predecessors that where the indictment charges the defendant with breaking *and* entering, proof by the State of either a breaking *or* an entering is sufficient; and instructions allowing juries to convict on the alternative propositions are proper. *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297 (1965) ; *State v. Vines,* 262 N.C. 747, 138 S.E. 2d 630 (1964) ; *State v. Best,* 232 N.C. 575, 61 S.E. 2d 612 (1950) ; *State v. Mumford,* 227 N.C. 132, 41 S.E. 2d 201 (1947) ; *State v. Houston,* 19 N.C. App. 542, 199 S.E. 2d 668 (1973), cert. denied, 284 N.C. 426, 200 S.E. 2d 662 (1973) ; N.C.P.I. Crim. 214.30.

In *State v. Simmons, supra,* defendant was tried upon a bill of indictment charging him with first degree murder "committed in the perpetration of the felony crime of burglary and the attempted perpetration of the felony crime of robbery." The defendant there complained of the trial judge's instructions which permitted the jury to find him guilty of first degree murder if it found that the killing was committed in the perpetration of a burglary or an attempted robbery. Justice Branch, for the Court, wrote:

"The requirement that the indictment in such a case as this one be couched in the conjunctive rather than the disjunctive is a sound rule of criminal pleading designed to inform the defendant of the crime for which he stands charged. *State v. Sellers,* 273 N.C. 641, 161 S.E. 2d 15; 42 C.J.S. *Indictments and Information* § 166; 41 Am. Jur. 2d *Indictments and Information* § 96. However, where, as here, the felonies charged clearly constitute part and parcel of the same transactions, we perceive no useful purpose in requiring that the proof must indicate the commission of *both* crimes. A finding that the homicide was committed in the perpetration of *either* crime suffices to support the conviction of murder in the first degree. We hold that it was not prejudicially erroneous for the trial judge to instruct that sufficient evidence of the perpetration of either felony

would suffice to bring defendant within the felony-murder provision of G.S. 14-17." 286 N.C. at 695, ____ S.E. 2d at ____.

We, therefore, hold that "[a]n indictment for burglary may lay the offense with several intents, as with intent to steal and intent to murder or to rape, as by alleging the several intents conjunctively in the same count." 12 C.J.S. Burglary § 32(a). Such an indictment is not duplicitous. It charges only one offense. Furthermore, when more than one intent is alleged the State need prove only one. It may prove more than one. Upon evidence of more than one intent the trial judge may submit the case to the jury on alternative theories. Cases from other jurisdictions which have considered these propositions have so held. *U. S. v. Thomas,* 444 F. 2d 919 (D.C. Cir. 1971); *State v. Berenger,* 161 N.W. 2d 798 (Iowa 1968); *State v. Fox,* 80 Iowa 312, 45 N.W. 874 (1890); *Hardeman v. State,* 15 Okla. Crim. 229, 175 P. 948 (1918). Judge Grist was apparently of the opinion that there was evidence only of an intent to commit larceny. He submitted the case to the jury on that theory alone. In this there was no error of which the defendant can complain.

## VI

[10] Defendant's assignment of error fourteen brings forward his contention that Judge Grist should not have instructed the jury that as a consequence of a verdict of guilty of burglary in the first degree the defendant would be sentenced to death. There was no error in this instruction. We fail to see how it could prejudice the defendant. We held in *State v. Honeycutt, supra,* that it was not error for prospective jurors to be informed during *voir dire* examination in a capital case that the consequences of conviction would be a sentence of death. We have agreed with the contention of defendants that refusal to allow inquiry of prospective jurors as to their beliefs and attitudes toward capital punishment was error prejudicial to them. *State v. Bell,* 287 N.C. 248, 214 S.E. 2d 53 (1975); *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974); *State v. Carey,* 285 N.C. 509, 206 S.E. 2d 222 (1974); *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974). General Statute 15-176.4, in effect at the time of this trial, requires that the court in a capital case "upon request of either party, shall instruct the jury that the death penalty will be imposed upon the return of a verdict of guilty. . . ." Although the record does not reveal that a request for such an

instruction was made by either the State or the defendant it was not error to give such an instruction even in the absence of a request. See *State v. Britt, supra,* where we held that in a capital case if the jury appeared confused as to the possible consequences of its verdict, the trial judge's failure to instruct that a guilty verdict would result in a mandatory death sentence was error prejudicial to the defendant.

[11] Finally, defendant contends that it was unlawful to impose the death penalty in this case. This Court has heretofore considered and a majority has consistently rejected all of his arguments on this point and does so here. *State v. Lampkins,* 286 N.C. 497, 212 S.E. 2d 106 (1975) ; *State v. Avery, supra; State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975) ; *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (1974) ; *State v. Honeycutt, supra; State v. Fowler,* 285 N.C. 90, 203 S.E. 2d 803 (1974) ; *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974) ; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974) ; *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974) ; *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973).

We have carefully considered the entire record and all of defendant's assignments of error. In his trial and conviction we unanimously find no error. A majority of the Court also hold that the sentence of death should be sustained.

For the reasons stated in the dissenting opinions in *State v. Williams,* 286 N.C. 422, 434-441, 212 S.E. 2d 113, 121-125 (1975), Chief Justice Sharp, Justices Copeland and Exum dissent from that portion of this opinion affirming the imposition of the death sentence and vote to remand for the imposition of a sentence of life imprisonment.

No error in the trial.

Death sentence sustained by majority vote.